FRED HARWOOD, APPELLANT, v. DAVID H. TREMBLEY AND JOSEPH MOHR, RESPONDENTS.

Submitted December 5, 1921—Decided March 6, 1922.

1. The streets of a city are common highways primarily designed for the use of the public in passing and repassing and in such temporary occupancy as is incidental to the exercise of those rights, and no one is justified in obstructing a public street by collecting therein a large assemblage of people for the purpose of delivering an address.
2. Anyone who attempts to use the streets of a city for the purpose of holding a public meeting, without having first obtained permission from the public authorities in charge thereof, commits a public nuisance.
3. The constitutional guaranty of liberty of speech does not authorize a person to appropriate the public property for the purpose of exercising that guaranty.
4. In order to protect the public in the full enjoyment of the city streets, the municipal authorities are clothed with the power to prevent such enjoyment from being unnecessarily interfered with; and in a given case, the question whether a public official has used proper means to prevent an intended illegal, infringement of the rights of the public or whether his action, under the circumstances, was without legal justification, is a question of fact to be determined by the jury and not one of law to be resolved by the court.

---

On appeal from the Supreme Court.

For the appellant, *Henry Carless.*

For the respondents, *Hyer & Armstrong.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  Harwood, the plaintiff below, brought this suit to recover damages for an assault alleged to have been illegally committed upon him by the defendants on May 31st, 1919, at the city of Rahway, in this state.  The trial resulted in a verdict for the defendants, and the plaintiff has appealed from the judgment entered thereon.

The material facts upon which the respective rights of the parties to the litigation depend are, briefly, as follows:  The plaintiff, who was acting state secretary for the Socialist party, had arranged for the holding of a public meeting in one of the city streets of Rahway, near the business centre thereof.  The city commissioners, having been applied to by members of the Socialist party for a permit to hold this meeting, after due consideration denied the application.  Having been informed of this fact, the plaintiff personally attended the next meeting held by the commission and renewed the application.  He was again informed that the meeting would not be permitted, and thereupon stated that he would hold the meeting anyway, and make a legal test of the question of his right to do so.  The time of the meeting had been fixed for May 31st, 1919, at eight o'clock in the evening.  Trembley, one of the defendants, who was the mayor of the city and the head of its police department, fearing that if the meeting was held a riot might ensue, because of the fact that there was at the Colonia hospital, which was just outside of the city of Rahway, a large number of soldiers who had returned from overseas after the armistice, and whose views with relation to the propriety of the world war were likely to be out of harmony with those which would probably be expressed by the plaintiff in his address, determined to prevent the threatened meeting from being held.  Realizing that the police force of the city, which consisted of twelve members, was hardly large enough to handle a riot, in case one should occur, he sent for Mohr, the other defendant, who is the chief of the fire department, and, after some discussion of the situation with him, instructed him to have a fire engine located near the

place at which the meeting was intended to be held, and, if the appellant attempted to speak, to turn the hose on him. In accordance with these instructions, the chief, just prior to the time fixed for the meeting, had a fire engine placed within a block of the street corner where the proposed meeting was intended to be held and attached this engine to a fire plug. At eight o'clock the appellant arrived, with some of his associates, erected a movable platform at the street corner and started to address a crowd of some seven or eight hundred people who had gathered there. He had only spoken a few words when Mohr, at a signal from the mayor, had the water turned on from the fire plug and directed the stream from the hose upon the appellant, washing him from the platform, wetting those in the immediate neighborhood thereof, and by so doing dispersed the meeting. It was this action on the part of the mayor and the chief of the fire department that constituted the assault upon which the appellant rests his claim for damages.

At the close of the testimony submitted in the cause plaintiff's counsel moved that the court direct the jury to find a verdict in favor of the plaintiff, leaving to it only the question of damages. This motion was denied. Counsel then requested the court to charge the jury that, under the evidence in the case, the respondents were not justified in using force of any kind. This request was refused. The only questions upon which the present appeal is rested are whether the motion to direct a verdict and the request to charge were, either of them, improperly denied.

The streets of a city are common highways, primarily designed for the use of the public in passing and repassing and in such temporary occupancy as is incidental to the exercise of those rights. No one is justified in obstructing a public street by collecting therein a large assemblage of people for the purpose of delivering an address to them. The common highways of the state are not designed for the purpose of holding public meetings therein, and anyone who attempts to do this, without having first obtained permission from the public

authorities in charge of such highways, commits a public nuisance. The constitutional guaranty of liberty of speech no more authorizes a citizen to appropriate to his own use the public property of a community for the purpose of exercising that guaranty than it permits him to occupy *in invitum* the private property of a fellow citizen for the same purpose. In order to protect the public in the full enjoyment of the city streets, the municipal authorities are clothed with the power of seeing that such enjoyment is not unnecessarily interfered with; and, in the exercise of that power, to take all reasonable steps to prevent such interference. In the present case the respondent Trembley, as has already been stated, was the mayor of the city of Rahway, and the head of its police department, and upon him rested the duty of seeing to it that the appellant was not permitted to obstruct public travel or in any other way interfere with the rights of the public by holding his proposed meeting in one of the city streets; and in the performance of this duty he was justified in using such means as were reasonably appropriate to its accomplishment, providing excessive force was not employed. The chief of the fire department, the other defendant, by virtue of the office which he held, was subject to the orders of the mayor, providing those orders were not outside the scope of the mayor's powers. · In this situation the question whether the mayor had used proper means to prevent the intended illegal infringement of the rights of the public or whether his action, under the circumstances, was without legal justification, was a question of fact to be determined by the jury, and not one of law to be resolved by the court. And what is true with relation to the action of the mayor is also true with relation to the act of the chief of the fire department in carrying out the mayor's instructions. This being so, the court properly refused to direct a verdict in favor of the plaintiff on the question of liability.

As to the request that the jury be instructed that the respondents were not legally justified in using force of any kind, it was legally refused, for the reason already indicated.

It may be added that the request was too broad, for the reason that, even if the course actually taken by the mayor and the chief of the fire department was without legal justification, nevertheless they were fully authorized to use such force as was reasonably necessary to prevent the appellant from violating the law.

The judgment under review will be affirmed.

MINTURN, J. (dissenting). When the plaintiff sauntered forth in the aftermath of Decoration Day, 1919, to enter the city of Rahway, as an itinerant disciple of economics and politics, he possessed an inflexible purpose, and, as the event proved, a flexible platform. He also possessed the notion that if perchance his preachments were at all obnoxious to law and order, he would be duly informed of the fact by the police officers; and, if he persisted, would be haled to the police station, where he might assert his legal rights. He also possessed the idea that the water cure was peculiar to sanitaria; and that the fire department in cities was utilized for the suppression of fires, and the police department for the suppression of vice and disorder. He was speedily disillusioned in those respects; for the mayor, doubtless guided by the biblical lesson that "some souls may be saved yet so as by fire," and by the doctrine of the Grand Monarch of France, that after him came the deluge, called out the fire department, and before the plaintiff had concluded his exordium, turned the fire hose upon him; and, under the strenuous impact of twenty-two to thirty-three pounds to the square inch of water, the plaintiff was taken from his feet, and the flexible platform was taken with him, and law and order in the city of Rahway were thus vindicated. Thus testified the mayor:

"*Q.* Why didn't you use the policemen on that night?

"*A.* Because I thought the easiest way was the best.

"*Q.* Were you holding a hose?

"*A.* You bet."

The plaintiff suffered severe injuries as a result of which he sued the defendants, the mayor and the chief of the fire de-

partment for damages. There was no dispute regarding these facts, and the case, therefore, presented only a question of law for the direction of the learned trial court, for the purpose of enabling the jury to estimate the damages. *Vandegrift, &c., Co.* v. *Camden, &c., Railway Co.*, 74 *N. J. L.* 669.

The defence was that some few miles distant there existed a home for disabled soldiers, who, if they should hear the plaintiff preaching, would create a riot; and, so, in apprehension of a possible riot, the mayor, as the conservator of law and order, thought "the easiest way was the best," and to avoid noise, confusion and all appearance of a riot or excitement, he called out the fire department, which, of course, brought crowds to the scene.

The learned trial court might have concluded that the aquatic remedy thus employed was the correct palliative and specific for the suppression of fires and like disorders; but that since there was no disorder here, and but a few persons listening to the plaintiff, the police force was the remedy intended by law for such a situation. But the court left it to the jury to say whether the fire department and the pressure of water used upon the plaintiff constituted a reasonable or an unreasonable exercise of force for the plaintiff's expurgation and elimination; and the jury found it was not unreasonable, and hence this appeal.

Manifestly, under this conception of the law, if the mayor could legally seize upon any weapon to dispose of the obnoxious political preacher, such as poison gas or a battery of artillery, the direction of the trial court was legally correct, based upon the exploded philosophical doctrine that the end justified the means; and if in the estimation of a jury he did not use too much gas, or too many shells, or too much Rahway water, his defence of law and order was not only reasonable but highly commendable.

Indeed, when we recall the legal records of the past, and the precedents furnished by the intolerance of an ancient atmosphere, which it was supposed to be the chief glory of this land, by its constitution and institutions to have dissi-

pated, we must admire the moderation of the defendants in the selection of their *modus operandi*. Recourse to such sources may be justified manifestly upon the theory that history is a series of repetitions which neither constitutions nor modes of government nor individual rights can in the retrogression gainsay, under the frenzy of misdirected patriotic zeal. Under its inspiring influence we have resorted to the town pump, the ducking stool, tar and feathers, expiation at the fiery stake and upon the gallows tree; and, under modern doctors of the law, shooting against the wall at early sunrise; we have had lynch law in the cotton belt, and long range fire upon the prairies; we have had the thumb screw and the rack; and the effective thought controlling machinery of Cromwell in Scotland and in Ireland, and of Alva and Torquemade in the Netherlands and in Spain; and when we realize that all of this was perpetrated under the patriotic fervor for law and order, our only answer and regret must be, that it was not done in the one case or in the other, in conformity with our legal or constitutional principles, but in manifest open and defiant violation of them.

The judgment should be reversed and a *venire de novo* awarded.

Mr. Justice Kalisch concurs in these views.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal*—MINTURN, KALISCH, JJ. 2.