[No. 23696. Department One. September 28, 1932.]

ALBERT STRONG *et al., Respondents,* v. FRED ERNST, *Appellant.*[1]

*LaBerge, Cheney & Hutcheson,* for appellant.

*Grady & Velikanje* and *Stanley P. Velikanje,* for respondents.

[1]Reported in 14 P. (2d) 697.

PARKER, J.—The plaintiffs, Strong and wife, commenced this action in the superior court for Yakima county seeking recovery of damages for personal injuries to both of them, and also for injuries to their automobile in which they were riding; such damages being claimed by them as the result of the negligent driving of the automobile of the defendant, Ernst, causing the cars to come into collision at the intersection of an arterial highway and a non-arterial county road in that county.

Upon the issues of negligence of the driver of the defendant's car, the defendant's liability for any such negligence, and the contributory negligence of Mr. Strong, the driver of the plaintiffs' car, the cause proceeded to trial in the superior court for Yakima county, sitting with a jury; which trial resulted in verdict and judgment awarding to the plaintiffs recovery against the defendant, from which he has appealed to this court.

The principal question here to be determined is whether or not the evidence supports any recovery against the defendant. We think the controlling facts, as the evidence warranted the jury in viewing them, may be summarized as follows:

The Naches highway, a main, arterial state highway, runs northerly from the city of Yakima. A non-arterial county road comes into the highway from a northwesterly direction some four or five miles northerly from Yakima. It does not cross the highway.

The highway has an oiled roadway surface twenty-two feet wide. This oiled surface is referred to generally as a pavement, though that seems not strictly correct. However, it well defines the traveled roadway portion of the highway.

The road has a well-improved graveled surface roadway about eighteen feet wide, which widens out

in fan-shape, so that it is about one hundred feet wide where it joins the highway, measured along the west side of the pavement; this to enable traffic to easily turn north or south onto the highway, or from the highway onto the road. This fan widening commences about one hundred feet northwesterly from the edge of the pavement, and the whole of its surface is practically on the same level as the pavement of the highway; and, while the whole of it is fairly well suited for driving over, and is, in fact, so used to a considerable extent, the turning of traffic onto and from the highway has made a somewhat distinguishable fork in the general lines of travel to and from the highway.

The road runs northwesterly along the southwesterly bank of the Naches river. There is a bridge on the highway crossing the Naches river, the southwesterly corner of which is practically at the north corner of the fan-shaped portion of the road. There is a steep hill rising along close to the west side of the highway and the southwesterly side of the fan-shaped portion of the road.

There is a stop sign, as the law provides, located near the southwesterly side of the fan-shaped portion of the road twenty-one feet distant from the west edge of the pavement of the highway, measured at right angles from the pavement, and approximately forty-five feet distant from the west edge of the pavement, measured along the southwesterly edge of the traveled portion of the road.

A person driving south across the bridge on his right-hand side of the bridge and pavement, has an unobstructed view from the bridge south along the pavement for a distance of considerably more than two hundred feet; that is, for a considerable distance of more than a hundred feet beyond the extreme southerly point of the fan-shaped portion of the road. A

person driving north along the pavement on his right-hand side thereof from a distance of a hundred feet south of the south corner of the fan-shaped portion of the road, has an unobstructed view north to the bridge and beyond, and also of a considerable part of the fan-shaped portion of the road, though his line of vision would probably not extend off the pavement to the west so as to have in view the stop sign.

In the afternoon of the day of the accident, the plaintiffs were proceeding south on the highway, approaching the bridge and the intersection. They were riding in their light auto truck, Mr. Strong driving. When they came to the south end of the bridge, they saw, at a distance of about two hundred feet, the defendant's Marmon car approaching north on the highway; that is, approaching at a point at about one hundred feet south of the south corner of the fan-shaped portion of the road.

As Mr. Strong observed the defendant's car, he thought it tended to go over to and along the westerly half of the pavement; that is, on its left side of the pavement. He says, in substance, that he was then induced to turn to his right off the pavement soon after leaving the bridge, as a matter of extreme caution. He passed the stop sign on his right near the southwesterly edge of the fan-shaped portion of the road.

At a point a short distance farther on, the defendant's car, having suddenly turned to the left from the pavement, manifestly to go onto the road, came in violent collision with the plaintiffs' truck, which was then within eight or ten feet of the southwesterly edge of the fan-shaped portion of the road and at some point, as to which the evidence is conflicting, between the stop sign and the extreme south corner of the fan-shaped portion of the road.

The jury could well believe from the evidence that

the plaintiffs' truck was at all times, after leaving the bridge, even while off the pavement, within plain view of the driver of the defendant's car. The plaintiffs' truck was proceeding at a rate of not more than twenty miles per hour, probably much less at the time of the collision. The defendant's car was proceeding at about twenty-five miles per hour up to the moment of the collision.

The driver of the defendant's car indicated an intention to turn from the highway onto the road by the usual sign of holding out her hand. Apparently, Mr. Strong did not notice this. However, it seems plain that the defendant's car had abundant opportunity to turn from the highway onto the road without striking the plaintiffs' car at the place where the cars came into collision. There was, at all events, abundant space for the defendant's car to pass behind the plaintiffs' car, in view of the wide fan-shaped portion of the road bordering upon the pavement of the highway.

The plaintiffs' car was not stopped when it came opposite the stop sign. Mr. Strong, manifestly, was proceeding upon the assumption that he was not required to stop upon his coming back upon the pavement, which he contemplated doing after passing defendant's car; this manifestly because he did not consider that he was coming into the highway off the road, and that his course after leaving the bridge would not so indicate to anyone approaching from the south on the highway.

The evidence is in serious conflict in certain important particulars. We have stated the facts as the jury had the right to, and apparently did, view them.

The defendant's car was being driven by a young lady who was his invited guest. He was taking her to a picnic dance, and was permitting her to drive his car, he sitting to her right in the front seat. This was

plainly their relationship. It is undisputed, also, that he was the owner of the car, and had called at her home about a half an hour before the accident to take her to a picnic dance at a picnic grounds a few miles northwest of the place of the accident, their contemplated journey being north along the highway and northwesterly along the road.

He had two other friends riding in his car who were sitting in the back seat. Just at the moment of the accident, and probably during a period of a few minutes immediately preceding, he was partially turned in the front seat looking back and talking to his friend sitting immediately behind his young lady friend, the driver.

It is contended in behalf of the defendant that the evidence fails to support any finding of negligence on the part of the driver of his car. The negligence of the driver of the defendant's car, as the evidence warranted the jury in finding, was that she suddenly turned off the highway pavement into the road, failing to keep farther to the right in the making of that turn.

We may concede, for present purposes, that, in making that turn, it was not strictly, legally necessary that it be made clear around to the north of the exact theoretical center of the intersection, in view of the fan-shaped portion of the road bordering on the intersection extending one hundred feet along the west edge of the highway. But there was ample room to make a much wider turn than was taken by the defendant's car without turning clear around the exact theoretical center of the intersection.

No part of the plaintiffs' car, when struck, was more than fifteen feet from the southwesterly edge of the fan-shaped portion of the road, thus leaving a clear space of twenty feet or more between their car and the exact theoretical center of the intersection within

which the defendant's car might have safely made the turn, even without passing beyond the exact theoretical center of the intersection. Besides, as the jury might well have concluded from the evidence, the plaintiffs' car was in plain view of the defendant's driver while it proceeded from near the south end of the bridge to the place of the collision of the two cars.

We are of the opinion that the question of the negligence of the driver of the defendant's car, as being a proximate cause of the accident, was for the jury to decide, as a matter of fact, and not for the court to decide, as a matter of law.

It is contended in behalf of the defendant that Mr. Strong was guilty of such negligence in the driving of the plaintiffs' car contributing to the accident, if not the sole cause of the accident, that the plaintiffs should be denied recovery, and that it should be so decided, as a matter of law. It is argued that Mr. Strong should have stopped in obedience to the stop sign situated at the southwesterly side of the fan-shaped portion of the road, and was negligent in not so doing.

Had he done so, his car would have been very close to, if not in the exact place of, the collision, and in any event in the direct path of the defendant's car, according to the evidence introduced in behalf of the defendant. Besides, as we have noticed, the course of the plaintiffs' car from the bridge along and off the pavement in plain view of the driver of the defendant's car was such that the jury could well conclude that the driver of the defendant's car was not warranted in assuming that Mr. Strong, in turning off the pavement upon leaving the bridge, intended to go up the road or intended to leave the highway.

We are of the opinion that the question of Mr. Strong's negligence as a contributing, proximate

cause of the accident was for the jury to decide, as a matter of fact, and not for the court to decide, as a matter of law.

It is contended in behalf of the defendant that he is, in no event, liable for any negligence of the driver of his car, because he was not driving at the time of the accident, his driver being an experienced, licensed driver. It seems to us that the defendant's ownership of the car; his presence in it; his consent to it being driven by his young lady friend; and she being his guest; render it plain that she was his servant for the time being, driving the car for him and not merely for herself, in so far as third persons injured by her driving were concerned. *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59; *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *Samuels v. Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24; *Brucker v. Gambaro,* 9 S. W. (2d) (Mo.) 918; *Hammond v. Hazard,* 40 Cal. App. 45, 180 Pac. 46; *Bell v. Jacobs,* 261 Pa. St. 204, 104 Atl. 587; *Watkins v. Brown,* 14 Ga. App. 99, 80 S. E. 212; *Thixton v. Palmer,* 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379.

The decision of the supreme court of Kansas in *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883, it seems to us, comes nearer supporting this contention made in behalf of the defendant than any decision called to our attention. In that case, the legal title to the car was in the defendant. Its general use, however, was by the defendant given to his adult son. The defendant was riding in the car as the guest of the son upon the occasion of the accident in question. The court held the defendant father not liable, five of the justices so holding and two dissenting. Clearly, that is not like this case.

We conclude that it should not be decided by the court in this case that the defendant is not liable for the negligence of the driver of his car.

█ It is contended in behalf of the defendant that he is, in any event, entitled to a new trial for error to his prejudice in the court giving to the jury an instruction reading, so far as need be here noticed, as follows:

"You are instructed that where a road starts from or leaves a state highway or arterial main traveled highway, travelers on such highway have the right of way over those seeking to turn to their left and enter upon the road."

We think this is a correct statement of the law. We so held in *Denney v. Power,* 159 Wash. 465, 293 Pac. 451, as applicable to cars approaching each other along a non-arterial street, one of which cars turned to the left on entering an intersection with a view of proceeding to the left on the intersecting street, and came in collision with the approaching car on its right-hand side of the street, upon which the cars had been approaching each other. We there said:

"Subdivision (14) of § 6362-41, Rem. 1927 Sup. (Laws of 1927, p. 802, § 41), reads as follows:

" 'Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicles first enter and reach the intersection or not: *Provided,* This paragraph shall not apply to drivers on arterial highways.'

"The basic fact which, in our opinion, controls this case is that, when appellant turned her car south on Cowley street, she placed the Denney car on her right, and thereupon it became her duty under the law to look out for and give the right of way to that car."

While this language had particular reference to intersections of non-arterial highways, it seems to us

that it is equally applicable to the facts of this case, as the jury had the right to view them. Manifestly, each car had, on its right-hand side of the road, the right of way over the other car. It seems equally plain to us, speaking generally, that not only did the plaintiffs' car have the right of way on the west half of the pavement, and also on the adjoining graveled portion of the intersection as a car traveling along the highway, but also had the right of way over the defendant's car as being on the right of defendant's car upon its turning to the left across the course of the plaintiffs' car. When the defendant's car turned to the left, it had then entered upon the course of the non-arterial road. It was then crossing the arterial highway.

Of course, in this case, the plaintiffs' car may have pursued such a course off the highway into the road that the jury would be·warranted in concluding that it did not retain the right of way under the circumstances; but that would be for the jury to decide. We are dealing with the question of whether or not this instruction is a correct statement of the law applicable to this case. We think it is, and conclude that there was no prejudicial error in giving it to the jury.

Some other claims of trial errors are made. We have carefully examined all of them, and deem it sufficient to say that we regard them not of sufficient merit to call for further discussion here.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, STEINERT, and HERMAN, JJ., concur.