[No. 28948. Department One.   June 23, 1943.]

CHARLES E. GLICK, *Appellant,* v. RAY ROPES *et al.,*
*Respondents.*[1]

[1]Reported in 138 P. (2d) 858.

*O. M. Nelson,* for appellant.

*Falknor, Emory & Howe,* for respondents.

JEFFERS, J.—This action was instituted in the superior court for Grays Harbor county, by Charles E. Glick, against Ray Ropes and wife, to recover damages sustained as the result of a collision between a truck driven by plaintiff Glick and a Buick car driven by defendant Ray Ropes. We quote paragraph three of plaintiff's complaint, as that paragraph contains the only allegations as to the claimed negligence of defendants:

"That on the evening of October 21, 1939, the plaintiff was driving his pick-up truck in an easterly direction on the Olympic highway between Montesano and Brady, Washington; that after having traveled approximately two-thirds of the distance to Brady from Montesano he decided to turn back to Montesano, and in so doing, made a left turn into a driveway on the north side of the highway; that his truck was almost completely off the paved portion of said highway; that the defendants at that time were driving their automobile in a westerly direction at an excessive and high rate of speed, to-wit: over sixty miles per hour, and causing their car to collide with the plaintiff's truck, striking it between the front and rear wheels and throwing it a distance of about 30 to 40 feet."

Then follows a statement of the damage claimed to have been done to plaintiff's truck, and the injuries sustained by plaintiff.

Defendants, by their answer, denied all allegations of negligence on their part, and, as a first affirmative defense, pleaded contributory negligence on the part of plaintiff. By way of cross-complaint, defendants

pleaded negligence on the part of plaintiff, as a result of which Mrs. Ropes was injured and defendants' automobile damaged.

By his reply, plaintiff denied the affirmative matter pleaded in defendants' answer and cross-complaint.

The cause came on for hearing before the court and jury on February 2, 1942. The following verdict was returned by the jury:

"We, the jury, being duly impaneled and sworn to try the above entitled cause, do find both plaintiff and defendants equally guilty of negligence and neither plaintiff, Charles E. Glick, nor defendants, Ray Ropes and Mrs. Ray Ropes are entitled to damages."

A motion for a new trial was made by plaintiff and denied, and thereafter, on September 4, 1942, the court entered a judgment of dismissal, from which judgment plaintiff has appealed.

Error is based upon the giving of instructions Nos. 12 and 15, and the refusal to give requested instructions Nos. 7 and 12; upon the denial of appellant's motion for new trial; and upon the entry of judgment of dismissal.

While, as stated in appellant's brief, his claim of error committed is based upon the giving of two instructions and the refusal of the court to give two requested instructions, it will be necessary to set out the evidence in order to determine whether or not the trial court had a factual as well as a legal basis upon which to base the instructions given and the refusal to give others.

The accident happened on the night of October 20, 1939, on the state highway between Montesano and Brady, at a point opposite the home of Mrs. Mabel Anderson. The highway had a paved surface of twenty feet, with a gravel shoulder on each side about twelve feet in width. Connecting with the gravel shoulder was a narrow plank bridge over a culvert, leading to the north and connecting with the private driveway into Mrs. Anderson's place.

While the witnesses were not very definite as to time, it appears that the accident happened about eight-thirty p. m. It was dark, and Mr. Ropes testified that, while some rain had fallen, it was not raining at the time of the collision. Appellant testified it was drizzling. Both cars had their lights on. To the west of where the accident occurred, the road is level and straight for a mile and a half, and to the east at least a mile.

Appellant testified that on the night of the accident he left Montesano, driving his Dodge pick-up truck, with the intention of going to Brady. He was accompanied by Mr. Walter James. Appellant was driving east on the highway, at about forty-five miles per hour, and, when about half-way to Brady, he determined to turn around and go back to Montesano, and began to look for a place to make the turn. When he saw the driveway into Mrs. Anderson's place, he slowed down, pulled into the driveway, and stopped with the front wheels of his truck resting on the little bridge hereinbefore referred to. We quote from appellant's testimony:

"So I looked for a place to turn around when he said that to me [referring to a remark made by Mr. James], so I slowed down, I seen a place to turn around there, and I pulled in on it, and figuring I got off the highway, and I stopped. I don't know any more after that. Q. What did you see in front of you when you made the turn? A. I seen a car coming, the headlights. · . . Q. When you drove up the highway and turned left, what observations did you make? A. Well, I looked in my glass and never seen a car coming close to me; and seen headlights coming towards me. Q. How far away? A. I couldn't tell. I figured fifteen hundred, maybe two thousand feet away, I couldn't tell, it was kind of dark. It was plenty far enough away so I would have plenty of time when I made the turn and went in there. Q. Do you know exactly where your car was when it was hit? A. Well, it was—Mr. Howe: Do you know? Q. Do you know exactly where it was? A. I know where I stopped before I got hit. Q. Where

was that? A. I had the front wheels on that little bridge there, and I completely stopped. Q. You were on the shoulder? A. I was on the shoulder of the road."

While this was the direct examination of Mr. Glick, Mr. Howe, counsel for respondents, asked the witness:

"Do you know where the rear wheels were? A. I wasn't looking back of me there. MR. HOWE: But you don't know, do you? A. Well, the front wheels was upon the bridge. I figured I was plenty far enough away, that I was perfectly safe."

His direct examination continued:

"Q. Do you know whether any part of your car remained on the pavement or extended over the pavement at that time? A. Well, it ought not to have been. Q. Do you know? A. Well, I know pretty close that I was off. . . . Q. You say you saw a car coming from the other direction? A. Yes, I did. . . . Q. And did you observe his speed when it came towards you? A. Well, I couldn't tell how fast a car was going at night, that way."

On cross-examination, Mr. Glick testified in part as follows:

"Q. So you made up your mind when he told you that [referring to a remark by Mr. James], that you were going to turn back? A. Yes, I did. Q. And you slowed down there? A. I slowed down, looking for a place to turn around, when he said something to me. Q. You saw this driveway? A. I seen this driveway, I seen this place there. Q. Some little distance ahead of you? A. Yes, because the head lights shown on it, I could see it. Q. And you stayed on your own right-hand side of the center of the highway, didn't you? A. Yes, I stayed on my own right side until I made that turn. Q. When you made that turn you were just opposite the driveway, weren't you? A. I might have been a little this side of it, but I couldn't say. I know I could make the turn, all right. Q. You stayed on your side, and then you turned right square across, didn't you? A. I don't know whether I turned exactly square or not, but I turned across that little bridge. Q. It was pretty close to a right-angle turn, right across the highway, wasn't it? A. Well, it would have to be pretty

close, that bridge was a whole lot narrower. . . . Q. You made a pretty sharp turn, didn't you? A. I had to get in there. . . . Q. Now, then, what signal did you give that you were going to turn? A. I had no occasion to give a signal. Q. You didn't give a signal? A. No, I didn't. . . . Q. Did you put out your hand? A. I did not. . . . Q. Now, where were you when you first saw Mr. Rope's car coming, you were just making the turn, weren't you? A. I was pretty close to this bridge before I seen him. Pretty close, and I seen him coming along in there, some place, judging—pretty good judge of distances—fifteen hundred feet from him there. Q. At the time you started making your turn? A. Yes. . . . Q. At the time you were starting to make your turn across this driveway, how far away was Ropes at that time? A. Well, I should judge he was about fifteen hundred, eighteen hundred feet away; something like that. Q. When you started to make the turn. How fast were you travelling when you made that turn across there? A. I wouldn't know. I wasn't going over six or seven miles an hour."

The witness again stated he was off the paved portion of the highway, and had stopped, when struck by the Ropes' car.

Mr. James, who was riding with appellant, testified in part as follows:

"Q. When was it you noticed this car coming? A. Just after we turned. I noticed it before we turned, I seen it coming way down there, but when I looked up we just turned in there and just started to stop, slowed down almost to a stop, and I said, 'Look out' and I ducked and turned my head this way, underneath my arm. . . . Q. How far was this Glick [Ropes] car away from you when you first noticed it, then? A. When I first noticed it, that was the first time I noticed, was the first time he turned. Q. After you made the turn? A. He was right on us. He wasn't—couldn't have been more than twenty or thirty feet from us when I turned my back to it."

This witness testified the Ropes' car was going "plenty fast." He also testified that appellant's car was struck behind the right front wheel.

Mr. Ropes testified that he was a service station operator, living at Mount Vernon, and had driven a car for many years; that he and Mrs. Ropes had been to San Francisco; that they had had supper that night at Castle Rock, and then had driven up through Elma and Brady toward Montesano; that as he approached the scene of the accident he was driving in his right-hand lane, at about forty miles per hour; that he noticed several cars coming from the west, and when opposite Mrs. Anderson's home, appellant's car turned directly across his path in front of him, when he was not over forty feet away; that it happened so quickly that he had no chance to stop or turn right or left, and he collided with appellant's car, striking it on the right side; that appellant turned suddenly, and the first thing the witness knew, appellant's car was straight across the highway in front of him; that he tried to stop, but had no opportunity; that he just got his brake on when the cars collided; that appellant indicated in no way that he was going to turn left across the pavement.

Mr. Ropes further testified that after the accident his car was still on the pavement, except for the front right wheel which was just off the pavement on the gravel. He further testified that the back end of the Glick truck extended three or four feet over on the pavement.

Mrs. Ropes testified that the collision took place on the paved portion of the highway. She also testified her husband was not driving over forty miles an hour, and that appellant turned left across the highway right in front of them; that, when she stepped out of the car after the collision, she stepped onto the pavement.

J. M. Porter, who was driving east on the highway, and was passed by appellant, and who followed appellant's car to the scene of the accident, testified that appellant made a sharp turn across the highway and respondents' car struck him. He further testified that in his opinion the two cars involved in the accident

were about forty feet apart when appellant made his turn across the highway. This witness further testified that after the accident the Ropes' car was entirely on the pavement, with the front wheels close to the edge of the pavement. He also testified that the back end of appellant's truck was on the pavement, and the front wheels just to the outer edge of the shoulder.

The only testimony that the Ropes' car was traveling more than forty to forty-five miles per hour at the time of the accident is found in the testimony of Irwin Edwards, who testified that respondents passed him about one-half mile east of the scene of the accident, and at that time he estimated respondents were traveling about sixty-five or seventy miles per hour. This witness also testified that after the accident the Ropes' car was entirely off the pavement and on the shoulder of the road.

It was appellant's theory that he had turned left across the road, was entirely on the shoulder, and had stopped with the front wheels of his truck on the little bridge, at the time he was struck by respondents' car.

It was respondents' theory that appellant, without giving any sign or warning, pulled directly across the highway in front of them, when the cars were so close together that Mr. Ropes did not have time to stop, or turn left or right, and that the collision occurred on the pavement, on respondents' side of the highway.

■ We now come to appellant's first assignment of error, which was in giving instruction No. 12, which reads as follows:

"A driver of a motor vehicle who desires to make a left-hand turn across a public highway for the purpose of entering upon a private driveway, is required by law to exercise an extraordinary degree of care to avoid a collision with other vehicles then using such highway."

Appellant's complaint of this instruction is in the use of the phrase "an extraordinary degree of care," appellant contending that the instruction should have re-

quired only such care as an ordinarily prudent driver would use, and further that Rem. Rev. Stat., Vol. 7A, § 6360-64 [P. C. § 2696-891], provides the degree of care to be used by all persons operating a motor vehicle upon the highways, and that the use of the word "extraordinary" goes further than the statute authorizes.

Appellant further contends that the statute above referred to was passed subsequent to the decision in the case of *Onkels v. Stogsdill,* 151 Wash. 194, 275 Pac. 692, relied on by respondents to sustain the instruction given. While it is true that § 6360-64, *supra,* was passed in 1937, and the *Onkels* case was decided in 1929, we call attention to the fact that, at the time the *Onkels* case was decided, § 3 (a), chapter 309, p. 770, Laws of 1927, was in full force and effect, which section, in so far as appellant's contention is concerned, contained the same provision as that quoted by appellant from Rem. Rev. Stat., Vol. 7A, § 6360-64.

We are of the opinion that, under the facts in the case, and in view of the statement quoted below, made by us in the *Onkels* case, the court did not commit error in giving this instruction. We quote from the *Onkels* case, *supra:*

"Respondent's home fronts on a portion of the highway which is straight for approximately one thousand feet, and it is undoubtedly the law that respondent, in undertaking to make a left-hand turn and cross the highway at a point other than a roadway intersection, is held to the exercise of extraordinary care and caution for the preservation of his own safety, and to avoid injury to others traveling upon the highway."

We do not think the case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, is applicable to the facts herein.

The next error assigned is based upon the giving of instruction No. 15, which states:

"You are instructed that when two automobiles approach each other on a public highway from opposite directions and one of these automobiles makes a left-

hand turn in front of the other approaching automobile, by so doing the other automobile is placed upon its right, and, therefore, is entitled to the right of way. You are further instructed that this right of way extends not only to the paved portion of the highway but also to the adjoining shoulder thereof.

"In this case, therefore, you are instructed that if you find from the evidence that the plaintiff, Charles E. Glick, made a left-hand turn with his automobile across the highway in front of the on-coming automobile of the defendants at the time when a collision was imminent, that by so doing he placed the defendants' automobile on his right and the defendants thereby became entitled to the right of way over the plaintiff. This right of way would extend to the shoulder of the highway as well as the paved portion thereof."

Appellant does not object to that part of the instruction which announced the rule that when two automobiles approach each other from opposite directions, and one car makes a left-hand turn in front of the other, by so doing the other automobile is placed upon the right of the one making the left-hand turn, and therefore is entitled to the right of way. Appellant does object to, and bases error upon, that part of the instruction which states that the right of way extends not only to the paved portion of the highway, but also to the adjoining shoulder thereof.

Appellant argues that it was not proper to instruct the jury that respondents had a right to run off the paved portion of the highway, contrary to the provisions of our statutes. Appellant then cites Rem. Rev. Stat., Vol. 7A, §§ 6360-75, 6360-77, and 6360-96 [P. C. §§ 2696-833, 2696-835, and 2696-854], and argues that it is obvious from these statutes that the right of way does not extend to the adjoining shoulder, where a person is traveling upon a public highway in the manner in which respondents were traveling. We are of the opinion that the statutes cited by appellant, to which we shall later refer, have no application to a

situation such as is presented by the evidence in this case.

Appellant cites *Barach v. Island Empire Tel. & Tel. Co.,* 151 Wash. 279, 275 Pac. 713, as sustaining his contention. In the cited case, there was evidence to show that a pedestrian was walking along a dirt shoulder, with her back to oncoming vehicles, when she was run down by the defendant's truck, coming at a high rate of speed, with the right wheels off the pavement and on the dirt embankment. We are of the opinion that the rule stated in the cited case as applicable to the facts therein is not applicable to the facts in the instant case.

Neither do we think the rule announced in either the case of *Duggins v. International Motor Transit Co.,* 153 Wash. 549, 280 Pac. 50, or the case of *Rieger v. Kirkland,* 7 Wn. (2d) 326, 111 P. (2d) 241, applicable herein.

We are of the opinion the facts in the case of *Strong v. Ernst,* 169 Wash. 617, 14 P. (2d) 697, and the rule announced in regard thereto, are applicable herein. In the cited case, error was based upon the giving of the following instruction:

" 'You are instructed that where a road starts from or leaves a state highway or arterial main traveled highway, travelers on such highway have the right of way over those seeking to turn to their left and enter upon the road.' "

In the course of the opinion, we stated:

"Manifestly, each car had, on its right-hand side of the road, the right of way over the other car. It seems equally plain to us, speaking generally, that not only did the plaintiff's car have the right of way on the west half of the pavement, and also on the adjoining graveled portion of the intersection as a car traveling along the highway, but also had the right of way over the defendant's car as being on the right of defendant's car upon its turning to the left across the course of the plaintiff's car."

In the case of *Grimes v. Fraser,* 178 Wash. 511, 35 P. (2d) 88, we applied the rule announced in the *Strong* case, *supra,* and concluded with this statement: "Whether the collision occurred on or off the paved road is immaterial, under the rule laid down in the *Strong* case."

We have never held that, under facts such as here presented, it was error to instruct that the right of way to which the driver on the right was entitled extended not only to the paved portion of the highway, but also to the adjoining shoulder.

We do not desire to be understood as holding that, under ordinary conditions, Rem. Rev. Stat., Vol. 7A, § 6360-77, which provides in part that

"Any person driving a vehicle upon any public highway of this state and overtaking another vehicle proceeding in the same direction shall pass to the left of such overtaken vehicle, . . ."

or Rem. Rev. Stat., Vol. 7A, § 6360-96, which provides that

"It shall be unlawful to operate or drive any vehicle or combination of vehicles over or along any pavement or gravel or crushed rock surface on a public highway with one wheel or all of the wheels off the roadway thereof, except for the purpose of stopping off such roadway, or having stopped thereat, for proceeding back onto the pavement, gravel or crushed rock surface thereof, . . ."

or Rem. Rev. Stat., Vol. 7A, § 6360-75, which provides that

"Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, or where an obstruction exists it is necessary to drive to the left of the center of such highway, . . ."

would not be applicable. However, we are convinced, as hereinbefore stated, that such statutes were not

meant to cover a situation such as here presented. Nor do we desire to be understood as holding that the operator of a motor vehicle is entitled to drive on any portion of the right side of the highway under any and all conditions. See *Rieger v. Kirkland, supra.*

The only inference which, in our opinion, could be drawn from the testimony in the instant case is that if Mr. Ropes drove off the paved portion of the highway, it was in an endeavor to avoid a collision which was imminent, such situation being caused by appellant's turning left across the pavement in front of respondents. The instruction states "when a collision was imminent." We are satisfied that the instruction was proper, under the facts herein and the authorities cited.

■ The next assignment of error is based on the refusal to give requested instruction No. 7. Appellant's exception to the refusal of the court to give such requested instruction is in the following language:

"Plaintiff excepts to the failure of the court to give plaintiff's proposed instruction No. 7 because said instruction embodies the law of the case, and was a proper instruction to be given to the jury covering the facts in the case."

Respondents contend the above requested instruction should not be considered, as the exception above noted is entirely inadequate to meet the requirements of Rem. Rev. Stat. (Sup.), § 308-10. We are convinced that, under the statute and our decisions in the cases of *Nelson v. Owens,* 166 Wash. 647, 8 P. (2d) 301, and *Drainage Dist. No. 2 v. Everett,* 171 Wash. 471, 18 P. (2d) 53, 88 A. L. R. 123, the above exception was too general, and did not meet the requirements of the statute, and therefore the instruction complained of cannot be considered.

■ Appellant also bases error on the refusal to give requested instruction No. 12, which states:

"A person operating a car upon the public highway at an unlawful rate of speed is guilty of contributory

negligence, in case of an accident, and cannot recover any damages for injuries to himself or damage to his property if such injuries or damage occurred."

We think the above instruction was not a correct statement of the law, and that the court was therefore justified in refusing to give it, even if it be conceded that there was testimony indicating that Mr. Ropes was operating respondent's car at an unlawful rate of speed at the time of the accident. If it be conceded that, at the time of the accident, respondents were traveling at an excessive rate of speed, that fact in itself would not bar a recovery by respondents on their cross-complaint, unless such unlawful speed was the proximate cause of the damage or injury. *See Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106.

Furthermore, as stated by respondents, the jury, in finding against respondents on their cross-complaint, must have found that they were negligent. This being true, appellant could not have been prejudiced by the refusal to give requested instruction No. 12.

The judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and MALLERY, JJ., concur.