[No. 559-1. Division One—Panel 1. March 13, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
WARNER MYERS, *Appellant*.

*Ralph A. Alfieri* and *John C. Stephenson,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *James R. Miller, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant was charged with murder in the first degree. He entered a not guilty plea and, in addition, a plea of insanity and mental irresponsibility at the time of the commission of the crime. After jury trial he was convicted. He appeals. The court below added new counsel on appeal.

The facts which the jury could have found from the evidence are these. On the evening of August 23, 1969, defendant shot and killed Marjorie May Thomson with a gun owned by him after she had rejected his sexual advances. Mrs. Thomson's death resulted from a bullet entering and exiting her body while seated in the chair in the living room of a house in which defendant was renting a room prior to and on the evening of August 23, 1969. The defendant, in order to conceal blood stains resulting from the shooting, burned the carpet in front of the chair. Immediately after the shooting, he took the deceased's body out of the room, placed it in the trunk of Mrs. Thomson's Chevrolet car, which was then parked near the building in which defendant's room was located, and drove to a Kent shopping center where he parked the car in the shopping center parking lot. From there the car was stolen, driven to Olympia, Washington, and there parked by the driver in a bowling alley lot. Upon a subsequent search of the trunk of the car, the body of the deceased was discovered. Following the discovery defendant was ultimately found and charged

with the crime of which he was convicted, this appeal following.

On the issue of insanity and mental irresponsibility, psychiatric testimony was received concerning the mental condition of the defendant at the time of the shooting. The psychiatrists testified that defendant for many years prior to the shooting and at the time of the shooting was a "chronic paranoid schizophrenic." Thus, Dr. Richard B. Jarvis, called as a witness both by the state and by the defendant, testified that schizophrenia "implies a fragmentation of personality so that one may think one way, feel another way, talk another way, act another way." He further testified:

> Paranoid refers essentially to the process of entertaining delusions, false beliefs, oftentimes delusions of persecution and oftentimes delusions of grandeur. In general, it is understood to indicate a feeling of living in a hostile environment where people are conspiring against one or everyone is out to give you a hard time, where nobody can really be trusted.

He further testified the term "chronic," in connection with the other two terms, simply means "of long duration, and essentially a fixed condition." He testified that the crime here "was the product of his mental illness." Nevertheless, Dr. Jarvis testified that the defendant was not legally insane under the M'Naghten Rule. He stated, when asked to explain the difference between medical and legal insanity:

> Well, as I understand it, a person can be psychotic, that is, medically insane, and yet, under the rigid criteria set by the law, still have the capacity to know what he's doing, to know that it is wrong; and that isn't too unreasonable, because in a state hospital where all of the people—where most people are adjudicated as "insane," there is still given privilege and responsibility, according to how much capacity they show for accepting responsibility.

He distinguished medical insanity so testified to from legal insanity under the M'Naghten Rule as "whether or not the man knew right from wrong at the time of the commission

of the crime." Accordingly, he testified that at the time defendant committed the crime "he knew that he was holding a gun, a .38 caliber pistol," knew that "he was pointing it at a human being," and knew "the probable consequences of such an act would be the death of the person at whom he shot the gun." In general all four psychiatrists agreed that defendant was and had been a paranoid schizophrenic. There was also testimony that defendant suffered from delusions and hallucinations, and one testified that, in his opinion, at the time of the crime defendant did not know the difference between right and wrong. The jury by its verdict rejected the defense of insanity and mental irresponsibility.

■ Defendant first contends the court erred in holding the defendant competent to stand trial. The issue of the defendant's competency to stand trial was heard prior to trial at length in a CrR 101.20W hearing. The court made detailed findings of fact. Included in the findings was the finding:

> The defendant is competent to stand trial. He appreciates his peril, is aware of his surroundings, is articulate and intelligent, is alert and is well able to assist his counsel in his defense.

This finding conforms to the applicable standard of competency to stand trial. *State v. Harvey,* 5 Wn. App. 719, 491 P.2d 660 (1971); *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968). We have carefully examined the record of the CrR 101.20W hearing and are abundantly satisfied that each of the findings made by the court, including the finding as to competency, is supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

■ Defendant contends that the court erred in holding that certain written and oral statements, made by him to the arresting police officers in the course of his trip from Arizona back to Washington following his arrest, were voluntarily made. The testimony showed that the statements were made after the defendant had been warned of his

Miranda rights, including the right to remain silent. There was psychiatric testimony received in support of the state's position that the statements were voluntarily made.

The trial court made detailed findings concerning the circumstances of the making of the statements. The findings so made included the following:

> The statement that he gave was not as a result of any threats, promises, duress, coercion or assurances by the police officers. The defendant was treated and handled considerately and courteously at all times by these officers and the statements given by the defendant were given intelligently, willingly, freely and knowingly by the defendant after he had voluntarily waived his constitutional rights and had waived them intelligently, willingly, freely and knowingly as to the consequences of such waiver.

We have examined the evidence and are satisfied that the finding is amply supported by the testimony received. *See State v. Haverty*, 3 Wn. App. 495, 475 P.2d 887 (1970).

■ Defendant contends that the court erred in refusing defendant's proposed instructions No. 6,[1] 7,[2] and 8,[3] and

---

[1] "With regard to the defendant's plea that he was insane or mentally irresponsible at the time of the commission of the act charged against him, you are instructed that it will be your duty to find him not guilty by reason of such insanity or mental irresponsibility if you find from the evidence that he was suffering from a disease or defective mental condition at the time of the commission of the act charged against him, and if you further believe that the commission of the act charged was a product of such abnormality, to-wit: A diseased or defective mental condition of the defendant.

"If, however, you believe that the accused was not suffering from a diseased or defective mental condition at the time he committed the criminal act charged, you may find him guilty; thus, in order for you to find the accused not guilty by reason of insanity, it must be proved by a clear preponderance of the evidence that the accused was suffering from a diseased or defective mental condition and that the commission of the act charged was a product of such abnormality.

"On the other hand, if you find that the accused suffered from a diseased or defective mental condition, he would still be responsible for his unlawful act if there was not causal connection between such mental abnormality and the action. That is he would be responsible if you find that the act was not a product of a diseased or defective mental condition."

erred in giving instructions No. 19,[4] 20,[5] and 21.[6] The errors

---

[2]"A person is insane or mentally irresponsible and not criminally responsible for his conduct if at the time of the conduct, as a result of his mental disease or mental defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

"Abnormality manifested only by repeated criminal or otherwise anti-social conduct, is not mental disease or mental defect."

[3]"If you find that at the time of the commission of the act charged, the defendant knew the nature and quality of his act, and knew that it was wrong, but that he was under such duress or mental disease as to be incapable of choosing between right and wrong as to the act done, and unable because of the disease, to resist the doing of the wrong act which act was the result solely of his mental disease, then you must find the defendant not guilty by reason of insanity or mental irresponsibility."

[4]"I instruct you that the term 'mental irresponsibility' as used alternatively with the term 'insanity' in the further plea of the defendant and elsewhere in these instructions, means what is defined in law as criminal insanity. If you find that the defendant was mentally irresponsible under the definition as contained herein, you must find the defendant not guilty by reason of mental irresponsibility.

"Every condition of mental irresponsibility or of insanity will not excuse a crime. A person may be sick or diseased in body or mind and yet be able to distinguish right from wrong with respect to a particular act.

"If the defendant is to be acquitted upon his plea of mental irresponsibility or insanity, the burden of proof is on the defense to satisfy you by a preponderance of the evidence that at the time the alleged acts were said to have been committed, his mind was diseased to such an extent that he was unable to perceive the nature and quality of the act with which he is charged, and was unable to tell right from wrong with reference to the particular act charged.

"The terms 'insanity' and 'mental irresponsibility,' as used in these instructions, are synonymous."

[5]"One who is otherwise sane will not be excused for a crime he has committed while his reason and willpower are temporarily suspended, not by any defect or disorder of the mind but by anger, fear, revenge or other passion, unless the jury can further find from the evidence that such person at the time of committing the act did not have the mental capacity to distinguish between right and wrong with respect to such act."

[6]"Irresistible impulse is not insanity and is no defense. An irresistible impulse is an impulse induced by, and growing out of, some mental disease affecting the volitive, as distinguished from the perceptive powers, so that the person afflicted, while able to understand the nature and consequence of the act charged against him and to perceive that it is wrong, is unable, because of such mental disease, to resist the impulse

claimed raise the basic issue of the propriety of instructing on the issue of the M'Naghten Rule as the sole test of insanity and mental irresponsibility rather than on medical insanity as a defense to the charge of murder in the first degree. The instructions refused are not set out in appellant's brief as required by CAROA 43, 46(f). Furthermore, when the exceptions to the instructions proposed and the instructions later given were taken below, proposed instruction No. 6 was stated to be "a recitation of the Durham Rule," but no further statement or argument was made concerning it. Proposed instruction No. 7, without further statement of reasons, was said to embody Model Penal Code § 4.01. Similarly, proposed instruction No. 8 was described without more to be "essentially one of irresistible impulse." Instructions No. 19, 20 and 21 given were excepted to, but without statement of grounds as is required by CR 51(f) and CrR 101.04W(e). *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966). It may be that in the trial briefs filed, which are not before us, the subject of criminal responsibility was fully discussed so that the trial court was aware of the nature of the rules referred to by defendant's counsel in his exceptions. These and other rules had been fully discussed in earlier Washington cases later referred to, as well as in cases such as *Wade v. United States,* 426 F.2d 64 (9th Cir. 1970), and *Durham v. United States,* 214 F.2d 862, 45 A.L.R.2d 1430 (D.C. Cir. 1954). *See State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962). Whatever doubt there may be as to the sufficiency of the assignments of error made to permit review here, or as to the sufficiency of the exceptions taken to conform with the requirements of CR 51(f), CrR 101.04W(e), and CAROA 46(f), so as to permit review, we nevertheless, in this case, consider the issue raised lest defendant be convicted of the crime of murder charged notwithstanding that he may be legally innocent by reason of insanity and mental irresponsibility. *See State v. Williams,* 4 Wn. App. 908, 484 P.2d 1167 (1971).

to do it. It is to be distinguished from mere passion or overwhelming emotion not growing out of, and connected with, a disease of the mind."

■ The merits of the competing rules have been much considered by our Supreme Court. In *State v. Maish,* 29 Wn.2d 52, 185 P.2d 486, 173 A.L.R. 382 (1947), and again in *State v. White, supra,* the court had rejected the irresistible impulse test as a test of insanity. As late as *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971), the court, citing its latest cases, *State v. White, supra,* and *State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970), again adhered to the M'Naghten Rule first announced in 1843. *M'Naghten's Case,* 8 Eng. Rep. 718 (H.L. 1843). The court approved the following as a correct statement of the M'Naghten test, 79 Wn.2d at 454:

> Is the mind of the accused so diseased or affected at the time of the commission of the act charged that he is unable to perceive the moral qualities of the act with which he is charged and is unable to tell right from wrong with reference to the particular acts charged.

Accordingly, no purpose would be served to again review the merits of the controversy concerning alternative tests of insanity described in *Reece* and in cases such as *Wade v. United States, supra,* the latter substantially adopting the criminal responsibility test of section 4.01(1) of the American Law Institute Model Penal Code. The trial court did not err in adhering to the M'Naghten Rule in the instructions given thereon and in refusing those proposed on the issue raised by the plea of insanity and mental irresponsibility. RCW 10.76.010, .020.

■ A related contention advanced is that the M'Naghten Rule applied to the defendant denies him equal protection and due process of law under the state and federal constitutions, and that the rule so applied constitutes "cruel and unusual treatment . . . because of [the defendant's] status as a psychotic or paranoid schizophrenic." He relies on *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). The case is clearly distinguishable. There a California statute made it a misdemeanor for any person to "be addicted to the use of narcotics." The California courts construed the statute as making

the "status" of the narcotic addict a criminal offense even though the defendant never used or possessed any narcotics within the state, nor had been guilty of any antisocial behavior there. The Supreme Court held that, as so construed in light of contemporary knowledge, the statute inflicts cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. In the instant case, the defendant is not punished because of his status as a chronic paranoid schizophrenic. He is punished for his criminal behavior determined to be responsibly undertaken on the basis of a test of insanity and mental irresponsibility still accepted by the great majority of states in this country. *See Powell v. Texas*, 392 U.S. 514, 534, 540, 20 L. Ed. 2d 1254, 88 S. Ct. 2145 (1968); *Seattle v. Hill*, 72 Wn.2d 786, 435 P.2d 692 (1967); *State v. Shelton*, 71 Wn.2d 838, 842, 431 P.2d 201 (1967). As stated in *State v. Reece, supra,* in discussing the respective merits of the medical and legal tests of insanity:

> However, the appellant has cited us to no evidence that the A.L.I. test embodies a consensus of the medical profession on the nature of insanity. Our examination of recent literature in the controversy over M'Naghten and other proposed tests of insanity convinces us that there is no agreement among psychiatrists concerning a definition of insanity. . . . Dr. Manfred Guttmacher, a member of the A.L.I. Criminal Law Advisory Committee, is reported as having told his fellows that neither M'Naghten's rule nor the A.L.I. test is meaningful to a psychiatrist.
>
> One psychiatrist-lawyer has said that, under both these tests, as well as the Durham test, courts consistently ask psychiatrists to make unpsychiatric determinations. . . .
>
> A professor of clinical psychology has offered a defense of M'Naghten, joining with a lawyer in publishing an article in 51 Minn. L. Rev. 789 (1967), entitled "The Virtues of M'Naghten."

79 Wn.2d at 455-56. No doubt the Fourteenth Amendment is directed against state action, including action legislative or judicial, or both. *Shelley v. Kraemer*, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836, 3 A.L.R.2d 441 (1947). *See* 16 Am.

Jur. 2d *Constitutional Law* § 491 (1964, Supp. 1971). Such action, like legislation, is presumptively constitutional. *State v. White, supra.* In the exercise of legislative or judicial power, it is not impermissible for those charged with the responsibility of exercising that power to take into account the then state of knowledge, medical or otherwise, as was done, for example, in *Robinson v. California, supra,* and in *State v. Reece, supra.* Accordingly, we cannot hold on the basis of the present state of medical knowledge as described in *State v. Reece, supra,* that the M'Naghten Rule, long followed in this state as the test of criminal responsibility in construing RCW 10.76, is so arbitrary and devoid of reason as to violate due process or equal protection of the laws, or to constitute cruel or unusual punishment, in violation of the Eighth and Fourteenth Amendments. *Cf.* Harlan, J., concurring in *Robinson v. California,* 370 U.S. at 678. Equal protection is not necessarily denied because of the pace at which the state proceeds in amending its laws. *See generally Katzenbach v. Morgan,* 384 U.S. 641, 657, 16 L. Ed. 2d 828, 86 S. Ct. 1717 (1966); *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 400, 81 L. Ed. 703, 57 S. Ct. 578, 108 A.L.R. 1330 (1937); 16 Am. Jur. 2d *Constitutional Law* §§ 490, 495, 505 (1964, Supp. 1971).

 Defendant contends that the court erred in admitting testimony concerning the presence of gun magazines and crime detective magazines in the defendant's room where the murder occurred. The only objection made to this testimony by defendant's counsel at the time it was admitted was "I'll object to that." No grounds were assigned. Accordingly, the objection was properly overruled. *State v. Richard,* 4 Wn. App. 415, 482 P.2d 343 (1971). In any case, the error claimed, even if reviewable, would not be prejudicial. No denial of due process is involved (*see State v. Williams,* 4 Wn. App. 908, 484 P.2d 1167 (1971)); nor is this a case, in the words of *State v. Louie,* 68 Wn.2d 304, 312, 413 P.2d 7 (1966), of "obvious and manifest injustice," requiring review notwithstanding failure to comply with an otherwise required procedural rule. *See Puget*

*Sound Marina, Inc. v. Jorgensen,* 3 Wn. App. 476, 475 P.2d 919 (1970). Lack of prejudice affirmatively appears. Thus, later testimony similar to that objected to was received without further objection. Furthermore, psychiatric testimony was received without objection that the reading of the type of magazines involved could have helped motivate the commission of the crime. Furthermore, when the issue of the defendant's insanity is in the case, evidence of the defendant's entire conduct becomes admissible if relevant to the issue of insanity and mental irresponsibility. *State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968); *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957). As pointed out in *State v. Johnson,* 56 Wn.2d 700, 708-09, 355 P.2d 13 (1960), it is discretionary with the trial court to permit evidence logically relevant after weighing any possibility of undue prejudice.

■■■ Defendant contends the court erred in refusing to grant defendant's motion for mistrial when the defendant refused to take the witness stand in his own case after his counsel, in his opening statement to the jury, had informed the jury that the defendant would testify. Earlier, at the end of the state's case in chief, defendant had informed his counsel and counsel had informed the court that the defendant did not wish to testify. By the next day, however, defendant had changed his mind. Defendant's counsel then offered other testimony on defendant's behalf. Defendant again advised his counsel that he would not testify. There was psychiatric testimony that his decision in the first of these instances was voluntary and made with an appreciation of the facts and of the consequences of not testifying. On the occasion of defendant's second refusal to testify, the court interrogated defendant at great length to assure himself that defendant's decision was voluntarily and understandingly made. Only then did the court deny the mistrial claimed. The question of whether the court should grant a mistrial is a matter in the trial court's discretion. *See Barnes v. Central Washington Deaconess Hosp., Inc.,* 5 Wn. App. 13, 485 P.2d 85 (1971). We cannot hold as a matter of

law that the defendant, by his own voluntary act, can create a cause for mistrial when the act consists of changing his mind about testifying. Although it is arguable that defendant's changes of mind might be ascribed to his mental state, there was both psychiatric testimony and court interrogation of the defendant concerning his first change of mind which showed the change to have been understandingly and voluntarily made. There was also court interrogation concerning his second change of mind leading to the same conclusion. It was, therefore, properly left to the jury to give proper effect to what had occurred in the jury's presence when passing upon the issues involved in the trial.

■ Defendant contends that the evidence of defendant's guilt was insufficient to submit to the jury and that his motion to dismiss made at the end of the state's case in chief should have been granted. He did not renew his motion to dismiss at the end of the entire case. Having elected not to stand on the motion to dismiss made at the end of the state's case in chief, but instead having offered evidence on the issues raised, he must be deemed to have waived the right to rely on the error now claimed. *State v. Thomas,* 52 Wn.2d 255, 324 P.2d 821 (1958). In any case, the evidence, and reasonable inferences therefrom, support the verdict of guilt as charged. *See State v. Emerson,* 5 Wn. App. 630, 489 P.2d 1138 (1971); *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968).

Defendant makes related assignments of error based on the giving of instructions No. 3 (embodying the substance of defendant's proposed instruction No. 3 not given by the court), 5, 6, 7, 14, 15 and 26 (the last not set forth in appellant's brief), defining the crime of murder in the first degree, its constituent elements, the presumption of innocence, proof of guilt, and penalties. He claims there is no substantial evidence to sustain the charge of murder in the first degree so as to warrant the giving of the objected-to instructions. Although instruction No. 26 is not set out in appellant's brief, we have nevertheless carefully reviewed

the record as to each of the instructions given and now complained of, and find substantial evidence on which to base the instructions given. The circumstantial evidence, the physical evidence, the statements of the defendant confessing the crime, including the defendant's written statement to the arresting officers concerning the crime while en route from Arizona to Washington, supplemented by his oral statements, each voluntarily given and held admissible by the court at a CrR 101.20W hearing, as well as the testimony of the psychiatrists concerning the voluntary character of the statements made, coupled with the psychiatric testimony that at the time of the murder defendant knew the difference between right and wrong, appreciating the moral quality of his act, persuade us that there is substantial evidence which justified the giving of the instructions complained of.

Defendant, in his brief pro se, has made 11 additional assignments of error. The court has had the benefit of a response both from the state and from defendant's counsel with respect to the additional assignments. We find none that constitutes reversible error. However, defendant's counsel supports defendant's pro se assignment of error No. 5, and we therefore discuss it. It is contended that the court erred in allowing psychiatrists to examine the defendant both on the question of his competency to stand trial and for the purpose of testifying on the insanity issue. Each issue is separate and distinct from the other. *State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970). Defendant pro se contends that psychiatrists examined the defendant on both issues and then testified to the results of their examination, thereby violating defendant's Fifth Amendment rights. He cites *Wade v. United States*, 426 F.2d 64 (9th Cir. 1970), and *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968). Neither case supports his position. *Wade v. United States, supra*, called attention to a possible constitutional question in a case of "coerced cooperation with a psychiatrist not chosen by the accused" (426 F.2d at 74), but did not decide the question. *United States v. Albright, supra*, held *inter*

*alia* that defendant waived his right to claim a violation of his Fifth Amendment rights by in effect consenting to, and even eliciting, the admission in evidence of defendant's incriminatory statements made to the examining psychiatrist who testified to them. 388 F.2d at 726, n.9.

█ The instant case is also a case of consent to the procedure used below with resulting waiver of the right to complain now. It is true the defendant did not expressly admit his guilt in open court. However, he did not object to testimony from the psychiatrists concerning his incriminatory statements to them. In fact, defendant called all four psychiatrists to testify in his own case in chief, and they testified fully on the basis of what he told them. During trial psychiatrists Jarvis and Raney, at the request of defendant's attorneys and with court approval, jointly examined defendant and testified to the results of their examination. During cross-examination of Dr. Jarvis by defendant's counsel, Dr. Jarvis testified that defendant had made "admissions of the crime to various people, including myself," although he added that defendant stated and explained that the admissions were false "in order to placate all of us." At no time below did defendant claim that the psychiatrists should not have examined defendant with a view to testifying both on the issue of his competency to stand trial and on the issue of his criminal responsibility; nor did defendant at any time object to testimony by the psychiatrists concerning statements made by the defendant to them in the course of their psychiatric examination. Furthermore, at no time did the defendant request the court to limit the testimony given by the psychiatrists to the issue of defendant's insanity and mental irresponsibility only and not permit such testimony to be used on the issue of defendant's guilt of the crime charged. Accordingly, the defendant, at no time having objected to the procedure used below and having participated on the assumption that what was done was properly done, is in no position to raise the contention he urges now. *See Jessner v. State,* 202 Wis. 184, 190, 231 N.W. 634, 71 A.L.R. 1005 (1930).

No doubt the receipt of testimony over a defendant's objection from a psychiatrist concerning the results of his examination, which includes a statement of the basis of his opinion, is a matter fraught with some danger. The basis of his opinion may well include reliance upon statements made by the defendant concerning the commission of the crime itself. Yet to limit the consideration of his testimony, which could include a repetition of defendant's incriminatory statements, to the issue of insanity, as a practical matter, may be insufficient to prevent the jury using such testimony on the issue of actual guilt. Justice Finley, in his dissenting opinion in *State v. Reece,* 79 Wn.2d 453, 459, 486 P.2d 1088 (1971), favored the suggestion of a bifurcated trial procedure. Under that suggestion, the first stage of the trial of the criminal case would be concerned only with whether the defendant committed the crime charged; the second stage of the trial would then be held, to be concerned only with the issue of insanity and mental irresponsibility. Danforth, *Death Knell for Pre-Trial Mental Examinations? Privilege Against Self-Incrimination,* 19 Rutgers L. Rev. 489 (1965); Comment, *Compulsory Mental Examinations and the Privilege Against Self-Incrimination,* 1964 Wis. L. Rev. 671, 681. However, on this record showing no objection, the matter is not before us for decision.

▇▇ Defendant contends the court erred in refusing instructions No. 3, 14 and 16. These are not contained in the statement of facts and cannot, therefore, be reviewed. CAROA 34(8); *Porter v. Chicago, M., St. P. & Pac. R.R.,* 41 Wn.2d 836, 252 P.2d 306 (1953); *State v. Moxley,* 6 Wn. App. 153, 491 P.2d 1326 (1971).

▇▇ Defendant further contends the court erred in refusing instructions No. 11 and 12, the former dealing with the law of diminished responsibility as it affects the capacity to form an intent to commit the crime charged, and the latter dealing with the law concerning the use of circumstantial evidence. The court may properly have refused instruction No. 11 because of the absence of substantial evidence to show that defendant's psychological problems

diminished or destroyed his capacity to form an intent to commit the crime charged. *State v. Carter,* 5 Wn. App. 802, 490 P.2d 1346 (1971); *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). *See generally,* Comment, *Criminal Law: Abnormal Mental Condition and Diminished Criminal Responsibility,* 23 Okla. L. Rev. 93 (1970). The court may have properly refused instruction No. 12 because its substance was contained in other instructions given, particularly instruction No. 15. *State v. Caril,* 4 Wn. App. 683, 483 P.2d 870 (1971). Whatever the reason for rejecting the proposed instructions, the exceptions respectively taken were too general to permit review. CR 51(f) and CrR 101.04W(e), applicable here, require that the objecting party "state distinctly the matter to which he objects and the grounds of his objection". A mere exception to the refusal without more, as is the case here, is not enough. *See Glick v. Ropes,* 18 Wn.2d 260, 138 P.2d 858 (1943); *Hansen v. Columbia Breweries, Inc.,* 12 Wn.2d 554, 122 P.2d 489 (1942); *State v. Wilson,* 38 Wn.2d 593, 231 P.2d 288 (1951).

 Defendant contends the court erred in refusing to give defendant's proposed instruction No. 13. That error is not argued and must be deemed to have been abandoned. *State v. Temple,* 5 Wn. App. 1, 485 P.2d 93 (1971); *State v. Agers,* 5 Wn. App. 12, 485 P.2d 100 (1971); *State v. Alden,* 73 Wn.2d 360, 438 P.2d 620 (1968).

 Defendant finally contends the court erred in refusing to grant defendant's motion for new trial or in the alternative for judgment notwithstanding the verdict, and in refusing to grant defendant's motion filed May 27, 1970 for relief from the judgment and sentence dated May 6, 1970, made under CR 60(b). The latter motion, which here is similar to a motion for new trial, was accompanied by an affidavit from defendant's counsel dated May 19, 1970 and a copy of a letter from Dr. Raney to defendant's counsel dated May 5, 1970. That letter referred to the joint examination of the defendant made by Dr. Jarvis and Dr. Raney "regarding his competency to make the decision to give up his legal defense." Defendant's counsel in his affidavit con-

574

tends that Dr. Raney's letter raised a substantial question of defendant's competency to stand trial or rationally understand the proceedings against him. Other than the May 5, 1970 letter addressed to defendant's counsel, the appeal record in the instant case contains no new matter on these motions that needs discussion other than that already had with respect to the individual assignments of error. The motions at best and the relief to be afforded thereby are addressed to the discretion of the court. Having considered the defendant's motions, we find no abuse of discretion in their denial. *See Peterson v. Gilmore,* 5 Wn. App. 55, 485 P.2d 622 (1971); *In re Estate of Abel,* 5 Wn. App. 37, 486 P.2d 313 (1971).

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied March 28, 1972.

Review denied by Supreme Court May 24, 1972.