## City of Louisville, et al. v. Lougher.

(Decided May 29, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Appeal and Error—When Court of Appeals May Not Disturb Chancellor's Findings of Fact.—Court of Appeals may not disturb the chancellor's findings of fact, unless they are against the preponderance of the evidence, or create more than a doubt as to their accuracy.

2. Injunction—Interference by Municipality and its Police Force with Proposed Unobjectionable Speech of Plaintiff and His Audience is Unlawful and Entitles Plaintiff to Injunction.—In view of Constitution, section 1, subsections 4, 5, 6, contemplated interference by municipality and its police force with plaintiff's proposed unobjectionable speech and his audience, not constituting assemblage, suppression and dispersion of which by police force is authorized by Ky. Stats., section 2885, held unlawful, and to entitle plaintiff to injunction.

3. Constitutional Law—Bill of Rights Entitles Plaintiff to Deliver Unobjectionable Speech, and Members of Lawful Audience to Assemble for Purpose of Hearing it.—Constitution, section 1, subsection 4, entitles plaintiff to communicate his opinions through an unobjectionable proposed speech, and subsection 6 entitles members of his audience to assemble in a peaceable manner to hear it, if assembly is not unlawful one within Ky. Stats., section 2885.

4. Unlawful Assembly—Proposed Assembly to Hear Speech Held Not "Unlawful Assembly," which could be Prevented or Dispersed in Advance.—Proposed assembly of persons to hear speech held not an unlawful assembly, within Ky. Stats., section 2885, so as to authorize its prevention or dispersion in advance; an unlawful assembly within section 1268 being an assembly of three or more persons with intent to commit a crime by open force; with intent to carry out a common purpose, lawful or unlawful, in a violent or tumultuous manner, to the terror or disturbance of others, or in such a manner as to give firm and courageous persons in the neighborhood of such assembly reasonable grounds to apprehend a breach of the peace.

5. Riot—Unlawful Assembly—What Acts of Speech Maker and his Sympathetic Hearers Constitute Unlawful Assemblage and create riot calling for suppression or Dispersion.—If public speaker or any of his sympathetic hearers should engage in any unlawful speech or conduct after the assemblage had been formed, of such a nature as to be reasonably calculated to produce a breach of the peace, the assemblage would become an unlawful one and subject to dispersion by peace officers, or if fights or affrays should result therefrom a riot would be created, and the duty would then be imposed upon the officers to suppress it.

6. Injunction—Generally, Police Officers will Not be Enjoined from Performing Proper Duties in Exercise of Police Power.—Generally, police officers will not be enjoined from performing proper duties in exercise of general police power, even though they perform them in an offensive and unlawful way.

7. Injunction—Police Officer May be Enjoined Whenever it is Necessary to Protect Property Rights.—Police officer may be enjoined whenever it is necessary to protect property rights, and especially where the remedy at law is inadequate.

8. Injunction—General Rule Against Injunction Against Police Officer Does Not Apply when Officers have no Duty to Perform.—General rule against injunction against police officer applies only when officers are engaged in performance of proper duties in the exercise of the general police power, and not when they have no duty to perform.

9. Constitutional Law—Every Citizen has Right to Follow Any Lawful Calling, Business, or Profession he May Choose.—Every citizen has right to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition.

10. Injunction—Owner of Property will be Protected in its Enjoyment by a Court of Equity.—Owner of property will be protected in its enjoyment by a court of equity, and is not compelled to relinquish it to a wrongdoer and to accept in lieu of it an award of damages.

11. Injunction—Right of Hired Speech Maker to Deliver Address Without Transgressing Law is Property Right.—Right of hired

speech maker to deliver address without transgressing law is property right, which may be protected by injunction.

12. Injunction—Judgment Enjoining Municipality and its Police Officers from Absolutely Preventing Hired Speech Maker from Attempting to Deliver Address Held Proper.—Judgment enjoining municipality and its police officers from absolutely preventing hired speech maker from attempting to deliver address on vacant lot procured for that purpose held proper.

13. Injunction—Judgment Enjoining Municipality and Police Officers from Disturbing Persons Assembled to Hear Speech Held Erroneous.—Judgment enjoining municipality and its police officers from preventing plaintiff from attempting to deliver speech, so far as it enjoined them from at any time disturbing either plaintiff or his assembled audience, held erroneous.

W. J. GOODWIN for appellants.

.J. S. LUSCHER for appellee.

Opinion of the Court by Judge Thomas—Affirming in part and reversing in part.

The appellee and plaintiff below, E. H. Lougher, filed this equity action in the Jefferson circuit court against the appellants and defendants below, the city of Louisville, its board of public safety and its chief police officers seeking to enjoin defendants from arresting him or procuring his arrest if he attempted to deliver a speech on a vacant lot which he had procured for the purpose upon the subject of "Americanism," a copy of which is in the record, and to enjoin them from interfering with his delivering the speech and from disturbing the audience while it was being delivered.

He alleged in his petition, as amended, that he was employed by a secret organization to deliver that and other like speeches in the interest of his employer, and that he received therefor an agreed compensation, and that if he was prevented by defendants from performing the services for which he was employed his property rights would be invaded, as would also the rights of himself and his hearers, as guaranteed by subsections 4, 5 and 6 of our Bill of Rights, being section 1 of our present Constitution. The section so far as applicable is: "All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned: . . . . 4. The right of freely communicating their thoughts and opinions. 5. The right of acquiring and protecting property. 6. The right of assembling together in a peaceable manner for

their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.'' He also alleged that the speech he intended to deliver, on the vacant property acquired for the purpose, was not upon any unlawful or forbidden subject and that the language he employed in delivering it and his manner in delivering it were in nowise offensive and that his hearers would constitute a peaceable and lawful assembly. He further averred that the individual defendants, who were peace officers of the city, threatened to and would arrest him if he attempted to deliver his speech and threatened to disperse his crowd as being an unlawful assembly, all of which they intended to and would do unless enjoined by the court. A temporary injunction was asked and obtained and a motion before a member of this court to dissolve it was overruled ''on the present showing.'' The case was then heard upon its merits and final judgment rendered perpetuating the injunction, to reverse which defendants prosecute this appeal.

There is some conflict in the testimony as to the peaceable character of the assembly to which plaintiff proposed to deliver his address and also upon the character of speech he proposed to deliver, but there is ample testimony in the record to support plaintiff's pleading in those respects. The chancellor found for him upon those issues and under the rule of practice prevailing in this court we are not authorized to disturb those findings, unless they are against the preponderance of the evidence or create more than a doubt as to their accuracy. We are unable to conclude from the proof in the record that the finding, of the court on those issues of fact are affected in either of the ways which would authorize our disturbing them. The same may be said as to the threatended intended arrest of plaintiff and interference with his audience by the individual defendants, who are the peace officers of the city. We shall, therefore, for the purpose of this case assume the facts to be as found by the chancellor.

Section 2885 of our present statutes, and which is a part of the charters of cities of the first class, defines the duties of the police force of such cities and so far as relevant to this case, it is, ''It is hereby made the duty of the police force, at all times of day and night, and the members of such force are hereby thereunto empowered to especially preserve the public peace; sup-

press riots, mobs and insurrections; disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; . . . enforce and prevent the violation of all laws and ordinances in force in said city.'' Defendants attempt to justify their threatened conduct, which this action seeks to enjoin, under the power and authority conferred by that section and which would be a complete defense if what plaintiff proposed to do was offensive to any of its provisions so as to call for the exercise of the power and authority conferred by it on defendants. Among the various duties imposed upon the police force by the section are the suppression of riots; the dispersing of unlawful or dangerous assemblages and the dispersing of assemblages which obstruct the free passage of public streets, sidewalks, parks and public places; and, unless the supposed audience gathered upon the vacant lot to hear plaintiff's proposed speech could be classified as either one of the three above mentioned assemblages which the police force is authorized by the section to suppress and disperse; or unless, the speech proposed to be delivered by plaintiff was a treasonable attack upon our laws and our form of government so as to arouse patriotic indignation on the part of loyal citizens and thereby pave the way for a breach of the peace, then it is clear that any interference on behalf of defendants would be unlawful and would afford plaintiff some sort of remedy as a means of redress.

We have already said that the copy of the speech composing a part of the record, which the proof shows plaintiff intended to deliver, was not of the above type and on its face violated no law to which we have been cited or which we have been able to find. We are not called upon in this opinion to express either approbation or disapprobation of either plaintiff's speech or his purpose in making it, or those of his employer in procuring him to make it, since our duties are circumscribed and limited to the inquiry—whether the *particular* speech that plaintiff proposed to deliver and the methods and purposes of his employer as set forth therein are such as the law, as written and expounded, tolerates? If so, plaintiff has the right under subsection 4 of section 1, *supra,* of our Bill of Rights to freely communicate his thoughts and opinions through the medium of his speech which he proposed to make, and if his audience was a lawful instead of an unlawful assembly its members also had the right under subsection 6 of the

same section of the Bill of Rights to assemble together in a peaceable manner to hear that speech. We have seen that there is nothing in the record to render the speech itself as portrayed in the record obnoxious, and it follows that so far as anything appearing to the contrary plaintiff had the right to deliver it. The proposed assembly was not to be held at a place where it would obstruct the free passage of any street, sidewalk, park or other public place and the only remaining question is: Whether it was or proposed to be an "unlawful or dangerous" one?

The common law definition of an unlawful assembly is thus given in the text in 39 Cyc., 831, "An unlawful assembly at common law is defined to be an assembly of three or more persons: (1) With intent to commit a crime by open force; (2) with intent to carry out a common purpose, lawful or unlawful, in such a manner as to give firm and courageous persons in the neighborhood of such assembly reasonable grounds to apprehend a breach of the peace in consequence of it," and on page 833 the constituent elements of such an assembly are thus stated, "To constitute an unlawful assembly at common law, and under the statutes generally, there must be in the minds of the persons making up such assembly, a fixed purpose to do an unlawful act, or to do a lawful or unlawful act in a violent or tumultuous manner, to the terror of disturbance of others." Other text writers adopt the same definition and which has not been altered or changed by any statute in this jurisdiction; but section 1268 of our statutes fixes the punishment for those who may be guilty of participating in such an assembly. There is no effort at proving in this case that there was in the mind of any person, including plaintiff, any fixed purpose to do any unlawful act at the proposed meeting where plaintiff's speech was to be delivered, or that they intended to commit any crime "by open force," or that they intended to carry out their purpose in such a manner as to cause firm and courageous persons in the neighborhood to entertain a reasonable ground to apprehend a breach of the peace, or that either plaintiff or his prospective audience intended to conduct themselves in a violent or tumultuous manner, "to the terror or disturbance of others." Therefore, on its face and as presented in the record it cannot be said under the definition, *supra*, that the assembly to be gathered together to hear plaintiff's speech was or would be an unlawful one so as to authorize its prevention or dis-

persal, until the commission of some conduct or some overt act by which the assemblage would be converted into a riot, but which could not be anticipated in advance so as to authorize police interference. We, therefore, conclude that the record furnishes no ground for such anticipatory action on the part of defendants. If, however, plaintiff or any of his sympathetic hearers should engage in any unlawful speech or conduct after the assemblage had been formed of such a nature as to be reasonably calculated to produce a breach of the peace, then the assemblage would become an unlawful one and subject to dispersal by those charged with preserving the peace, and if fights or affrays should result therefrom a riot would be created and the duty would be immediately imposed upon the officers to suppress it by dispersing the crowd or arresting those engaged in it.

Lastly, it is earnestly insisted that a court of equity will not enjoin police officers from such interferences as are here involved, since to do so as is contended, would be the enjoining of criminal proceedings. It may be conceded that generally police officers will not be enjoined "from performing their proper duties in the exercise of the general police power even though they perform them in an offensive and unlawful way." 22 Cyc. 889. But the same text also says that such officers will be enjoined "from illegally doing irreparable injury to the property of individuals," and the law seems to be well settled that wherever it is necessary to protect property rights police officers may be enjoined, and especially so, where the remedy at law is inadequate. However, before the general rule against such injunctions can be made applicable the police officer or officers, whose acts are proposed to be enjoined, must be engaged in "performing their proper duties in the exercise of the general police power," and if they have no duty in the premises the reason for invoking the rule against their being enjoined ceases. Here, as we have seen, there was no duty in the premises because there was neither a threatened riot, unlawful assembly, nor forbidden address and plaintiff's property rights were involved, since if he was prevented from delivering his speech and performing the services for which he was employed, his earning rights would be invaded, and it requires no argument to show that the remedy at law would be inadequate, since plaintiff has the right to preserve his property intact. He cannot be required to per-

mit it to be taken away from him and look only to a suit for damages for relief. The law upon the subject is thus stated by the Supreme Court of the United States in the case of Dent v. West Virginia, 129 U. S. 625: "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to everyone in like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken." It is but the announcement of the old theory that one may hold his property undisturbed and will be protected in its enjoyment by a court of equity, since he is not compelled to relinquish it to a wrongdoer and to accept in lieu of it what a jury might award him in a suit for damages. Plaintiff's property right, as manifested by his pleading and proof, to deliver the address in this case is as much a property right as long as he transgresses no law as is the owner of any other species of property, and on the showing made in this record we are unable to detect wherein the court erred in enjoining defendants from absolutely preventing plaintiff from attempting to deliver his address.

But the injunction went too far and was too broad in its terms, since it not only granted the injunction as above indicated, but it also enjoined defendants from at any time "disturbing or dispersing any audience or audiences assembled to hear plaintiff deliver said address or addresses." If the assemblage, as we have hereinbefore stated, should for any of the reasons herein stated be converted into an unlawful assembly or become a riot it would be the duty of defendants to interfere and suppress the riot as well as to disperse the assembly and arrest the guilty parties. Under the injunction as granted by the court the defendants would be powerless to preserve the peace or to arrest the offenders against the law in the event of any of the occurrences above indicated, and is in direct violation of the rights and

authority of courts of equity to interfere with public peace officers in the discharge of their imposed duties.

Wherefore, the judgment is affirmed in so far as it enjoins defendants from preventing plaintiff from attempting to deliver his address, but in so far as it enjoins them at any time from disturbing either plaintiff or his assembled audience it is reversed, with directions to modify it in conformity with the principles of this opinion.

Whole court sitting, except Judge Dietzman, who was counsel for defendants.