Koss and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

YARIS and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*January 11—February 5, 1935.*

*Samuel D. Berg,* attorney, and *George J. Laikin* of counsel, both of Milwaukee, for the plaintiffs in error.

For the defendant in error there was a brief by *William A. Zabel,* district attorney of Milwaukee county, *Thomas A. Byrne,* assistant district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Byrne.*

FRITZ, J. The plaintiffs in error, hereinafter called the defendants, contend that a verdict finding each of them guilty of engaging in an unlawful assembly and riot in violation of sec. 347.02, Stats., is not supported by, and is contrary to, the evidence; and that the court's instructions to the jury were

erroneous, misleading, and prejudicial. A review of the record discloses that the evidence established the following facts beyond a reasonable doubt: On September 27, 1933, Dr. Luther, the German ambassador to the United States, was expected to arrive at about 1 p. m. at the Milwaukee Club, located on the east side of North Jefferson street, at the intersection of East Wisconsin avenue, in a busy down-town section of the city of Milwaukee. The traffic is heavy on both of those public highways, and the principal entrance to a large hotel is on the west side of North Jefferson street, immediately opposite the entrance to the Milwaukee Club. At 1 p. m. about two hundred persons, including the defendants, assembled in front of the club entrance and blockaded pedestrian travel on the east sidewalk, and north-bound vehicular travel on the east half of the roadway on North Jefferson street. Six signs, with wording such as "Luther, agent of the bloody Hitler," "Roosevelt, where is the unemployment insurance you promised the workers," etc., were displayed on sticks carried by persons in the crowd. Each of the defendants, raised, in turn, on to the shoulders of others standing in the roadway near the east curb in front of the club entrance, addressed the assembly in protests against German Fascism, Hitlerism, and Dr. Luther's visit in furtherance thereof. A police sergeant endeavored to go among the assembled persons and to the speakers in the center of the crowd, and commanded them to disperse because they were blockading the traffic on the street and to the club. The defendants urged the assembled persons not to move, and many of the latter, by locking arms, closed in around the defendants and prevented the police sergeant and three other police officers, who came to his assistance, from dispersing the assembly. The officers telephoned for police reinforcements to aid in suppressing the disturbance, and a serious melee resulted. The officers' attempts to remove some of the disturbers were resisted with the assistance of others, including the defendants,

who advised resistance and raised their arms in a fighting attitude. One officer was kicked in the groin, spit in the face, and struck on the head with one of the signs, and another man standing on the west sidewalk was hit with a sign. Meanwhile the assembly became so large that public travel was blockaded over the entire width of North Jefferson street, until the police, upon the arrival of reinforcements and the arrest of the defendants and other leaders in the disturbance, finally succeeded in dispersing the assembly.

Those facts well warranted the jury in finding that the defendants wilfully participated in assembling and keeping together on a public highway a large number of persons, who, while so assembled, unlawfully and in a violent and tumultuous manner blockaded the entrance to the Milwaukee Club and lawful passage along North Jefferson street by persons entitled to use the street for those purposes without being disturbed; and who also unlawfully refused to disperse peaceably when commanded to do so by police officers. Defendants' conduct in those respects was clearly in violation of the provisions in sec. 347.02, Stats., that—

"Any three or more persons who . . . being together, shall make any attempt or motion towards doing a lawful or unlawful act in a violent, unlawful or tumultuous manner, to the terror or disturbance of others, shall be deemed an unlawful assembly; and if they commit such acts in the manner and with the effect aforesaid they shall be deemed guilty of a riot and shall be punished," etc.

There may be a punishable violation under those provisions, even though the accused did not assemble, at the outset, in a violent or tumultuous manner to do an unlawful act. True, a gathering which assembles, at the outset, for the purpose of doing an unlawful act, constitutes one type of unlawful assembly that is punishable under that statute. But, as was recognized in *Bonneville v. State,* 53 Wis. 680, 684, 11 N. W. 427, there is also a second type of unlawful assembly that is punishable under that statute. Even though, at the

outset, three or more persons assemble peaceably, without any violent or tumultuous manner, and to do but a lawful act, nevertheless, if thereafter, being together, they make any attempt or motion to do any act, whether lawful or unlawful, in either a tumultuous, violent, or unlawful manner, to the terror or even only to the disturbance of others, they become an unlawful assembly, and, if they commit such act in that manner and with that effect, they are guilty of a riot, and subject to punishment under the statute.

As the evidence established beyond a reasonable doubt that the assembly in question unlawfully blockaded public travel on the street, and also unlawfully refused to disperse when commanded to do so by the police officers, it was of the second type which is prohibited by sec. 347.02, Stats. Under those circumstances, the following instructions, excepted to by the defendants, but in which the court rightly stated what ultimate facts had to be established in these cases in order to find that offenses were committed in violation of sec. 347.02, Stats., were applicable and proper in all respects, to wit:

"And if after the assembly had occurred and while the meeting was being held and speeches were being made the assembly attempted or made a move toward blockading the sidewalk or the street, or both, or blockading the entrance to the Milwaukee Club, such assembly became an unlawful assembly and if it was violent and tumultuous and resulted in terror or in a serious disturbance to those who were the object of the demonstration and protest it became an assembly as amounted to a riot and to a violation of this statute which I have quoted."

"If after the assembly here in question had come together and during the course of the meeting it resulted in blockading the sidewalk and street or either or the entrance to the Milwaukee Club and the officers, in this case the policemen called upon the members of the assembly to disperse, and if the persons so assembled did not thereupon immediately and peacefully disperse the assembly became at that point an unlawful assembly and those participating in it were subject to arrest and punishment."

Under the first of those instructions, the jury was correctly informed that the unlawful act of blockading traffic on the highway would render the assembly unlawful if it was violent and tumultuous and caused terror or serious disturbance to others; and, under the second instruction, the jury was rightly informed that the assembly became unlawful if, after the unlawful blockading of the highway or club entrance, the persons assembled failed to disperse immediately upon being asked to do so by the police officers. The latter portion of that instruction was warranted by provisions in sec. 347.02, Stats., which, so far as applicable under the evidence, were stated in substance in the following instruction, to which defendants also excepted, to wit:

"Another statute bearing upon the same subject contains provisions that if any persons to the number of thirty or more shall be unlawfully, riotously or tumultuously assembled in any city, it shall be the duty of certain officers named, including constables, which includes police officers, the sheriff and his deputies, to go among the persons so assembled, or as near them as may be with safety, and in the name of the state of Wisconsin, to command all persons so assembled immediately and peaceably to disperse, and if the persons so assembled shall not thereupon immediately and peaceably disperse, it shall be the duty of such officer or officers to cause the arrest and taking into custody of the persons so unlawfully assembled. In such instance the assembly would be an unlawful assembly."

That instruction properly informed the jury as to the substance of those portions of sec. 347.04, Stats., which make it the duty of police officers "to command" assembled persons "immediately and peaceably to disperse," and to make arrests in order to suppress an unlawful assembly under certain circumstances, including "if any persons to the number of thirty or more, whether armed or not, shall be unlawfully, riotously or tumultuously assembled," and if they shall not immediately and peaceably disperse when commanded to do so by such officers. As there was ample evidence from which the jury could find that the defendants, as part of a crowd of more

than thirty persons, were blockading public travel on the street in an unlawful and tumultuous manner, and that they did not immediately and peaceably disperse when commanded to do so by the police officers, that instruction, in substantially the words of the statute, as to the duties of police officers under such circumstances, and as to the assembly becoming unlawful, if it failed to disperse when called upon to do so by the officers, was clearly applicable and proper. The court did not thereby purport to define any other crime than that which was charged. Neither were any of the instructions worded in such manner as to warrant the inference that the court was improperly assuming or informing the jury that the assembly in question was, in fact or in law, unlawful, or that it was therefore the officers' duty to break it up. By using the word "if" in those instructions, the court expressly and rightly made the application of the legal consequences prescribed by sec. 347.04, Stats., in the event that an assembly, although originally lawful, made an attempt or motion towards an unlawful act and was violent and tumultuous and resulted in terror or disturbance to others, or in the event that an assembly failed to immediately and peaceably disperse if called upon to do so by the police upon its having unlawfully committed an unlawful act, such as unlawfully blockading the street or club entrance to the disturbance of others, contingent upon the actual existence of the state of facts prescribed by statute as essential in order to give rise to those legal consequences.

As it appears beyond dispute that neither the defendants nor those in the assembly who acted upon the defendants' exhortations not to disperse, were intent upon using North Jefferson street in the exercise of the legal right of travel along a public highway, as recognized by this court in *Shields v. State*, 187 Wis. 448, 204 N. W. 486, but that they were unlawfully obstructing and blockading public travel by others entitled so to do without any such wilful interference or disturbance, there is not involved in this case any question as to

the right (*Shields v. State, supra; State ex rel. Garrabad v. Dering,* 84 Wis. 585, 54 N. W. 1104) of marchers to peaceably parade upon public highways. Neither is there involved herein any question as to the constitutional right to peaceably assemble for the purpose of protestation or otherwise at a place which is not primarily dedicated to public travel (as in a city street, *Park Hotel Co. v. Ketchum,* 184 Wis. 182, 199 N. W. 219; *Randall v. Milwaukee,* 212 Wis. 374, 378, 249 N. W. 73), and which can lawfully be used for such an assembly. Likewise, there was no error in instructing, in immediate connection with the charge that "the mere peaceable assembling of a large number of people upon a public highway with no unlawful purpose is not in itself unlawful," that "if such assembly becomes of such a nature, or such a number, that it in fact results in unreasonably obstructing the use of the highway for public travel or results in a trespass of private property, it becomes unlawful." The manifest purport of that instruction was to inform the jury merely that it would be unlawful (as was held in *Commonwealth v. Surridge,* 265 Mass. 425, 164 N. E. 480, 62 A. L. R. 402; *Barker v. Commonwealth,* 19 Pa. 412; *Fairbanks v. Kerr,* 70 Pa. 86, 92, 10 Am. Rep. 664; *Harwood v. Trembly,* 97 N. J. Law, 173, 116 Atl. 430; *Louisville v. Lougher,* 209 Ky. 299, 272 S. W. 748; *People v. Anderson,* 117 Cal. App. (Supp.) 763, 1 Pac. (2d) 64, 67, 68; *Mackall v. Ratchford* (C. C.), 82 Fed. 41, 43, 44; *Reg. v. Watson,* 6 Can. Crim. Cas. 331) for an assembly while listening to a public speech to unreasonably obstruct the use of a highway for public travel, or to trespass upon private property, even though, otherwise, the mere peaceable assembling of a large number of people upon a public highway with no unlawful purpose or consequence is not in itself unlawful.

Exception was also taken to the instruction that—

"Evidence has been received to the effect that the defendant Bassett has been heretofore convicted of a crime. This

evidence was so received because it bears upon the credibility of such defendant as a witness. The law assumes that a witness who has been convicted of a crime may not be as worthy of belief as a witness who has never been convicted of crime, and the fact of conviction is one that you may take into consideration in weighing his testimony and determining upon his credibility. It must not be used for any other purpose and particularly you would bear in mind that conviction of a defendant of a crime at some previous time is no proof that he is guilty of the offense with which he is now charged."

On the trial Bassett had testified that he had been convicted of a crime. On the other hand, there was no such evidence as to any other witness. As, under those circumstances, Bassett was the only witness as to whom there was any such evidence or such an instruction could possibly be applicable, no error was committed in mentioning his name in the instruction, which rightly informed the jury as to the reason for receiving, and the only purpose for which such testimony could be considered. That the instruction was only applicable to Bassett should and would undoubtedly have been appreciated by the jurors regardless of whether the court mentioned or omitted Bassett's name. Although, ordinarily, instructions as to rules of law for determining the credibility of witnesses, or the weight of evidence, should not single out or discredit any particular witness or item of evidence (*Schutz v. State,* 125 Wis. 452, 460, 104 N. W. 90, 93; *Grabowski v. State,* 126 Wis. 447, 105 N. W. 805), there was, in view of the facts last stated, no prejudicial error in thus mentioning Bassett's name. *Stevens v. People,* 215 Ill. 593, 74 N. E. 786. On the contrary, the manner in which the court expressly limited the purpose and effect of that testimony evidences the court's intention to properly protect Bassett against any unwarranted, unfavorable deduction therefrom by the jury.

*By the Court.*—Judgments affirmed.