[No. 1563-1.    Division One—Panel 1.    September 5, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. LEON C. JOHNSON *et al.*, *Appellants*.

528

Koenigsberg, Brown, Sinsheimer, Stone & Meltzer, Ronald J. Meltzer, and Robert Czeisler, for appellants.

Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel, and Eugene G. Olson, Chief Criminal Deputy, for respondent.

HOROWITZ, C.J.—The defendants' consolidated appeals are from convictions after jury trial for failure to disperse from the place of an "unlawful meeting" after warning by a police officer so to do (RCW 9.27.070); and for participation in an "unlawful assembly" (RCW 9.27.060).

The facts as the jury could have found them are these: The area involved is located southeast of Commencement Bay on the outskirts of Tacoma, Washington. It is a partially wooded area bounded on the northeast by the Puyallup River; on the northwest by the Burlington Northern railroad bridge and approaching tracks; on the southwest by railroad tracks, back of which is a commercial area; and on the southeast by the Milwaukee railroad bridge and approaching tracks. The Highway 99 bridge runs east and west above the area about halfway between the Burlington Northern and Milwaukee bridges. There was an Indian encampment in the upstream or southeast portion of the area about halfway between the Highway 99 bridge and the Milwaukee railroad bridge. A levee adjoins the Puyallup River and runs parallel to it. The levee separated the river from the encampment.

The two incidents next described occurred in the general vicinity of the Indian encampment. The first so-called "unlawful assembly" incident took place northwest of the encampment, beyond the Highway 99 bridge, at the point where the Burlington Northern bridge crosses the river. The second so-called "unlawful assembly" incident occurred southeast of the encampment at the point where the Milwaukee bridge crosses the river.

Shortly before September 9, 1970 the Washington State Department of Fisheries requested police assistance in removing fishing nets believed to have been illegally placed in the Puyallup River by a group of Puyallup Indians. On the morning of September 9, a force of police officers commanded by Capt. Grady of the Tacoma Police Department, together with state fisheries and state game officers, went to the vicinity of the Indian encampment previously described for the purpose of removing one such net.

Those responsible for directing police operations in the area, including Capt. Grady and Lt. Henderson as well as their superior officers, determined on the basis of reports received from officers positioned about the area and from personal observations that there were persons in the vicinity of the camp and river who were armed, that the situation posed a serious threat to the safety of the fisheries officers attempting to remove the net, that this was an unlawful assembly, and that an order to disperse should be broadcast throughout the general area. Thus, before the officers deployed in the direction of the illegal net, Lt. Joyce of the Tacoma Police Department gave the following warning in the hearing of Indians and sympathizers assembled in the area:

Attention, this is Lt. Joyce of the Tacoma Police Department. This is an illegal gathering; you are ordered to lay down your weapons and to leave the area peaceably; anyone failing to do so will be placed under arrest.

The warning was broadcast about six times between 9:30 and 9:45 a.m. from a mobile speaker situated on the Highway 99 bridge. The warning was directed both in an up-

stream and downstream direction and was loud enough to be heard by those assembled in the area.

No one left and no one began to leave. The officers had begun to deploy. One group, led by Capt. Grady, proceeded downstream to help effect the removal of a net from the Burlington Northern bridge. The second group, led by Lt. Henderson, contained the area upstream from the Highway 99 bridge, including the Indian encampment.

As Capt. Grady's group came along the railroad leading to the west end of the Burlington Northern bridge, they were confronted by a crowd of people, some of them aiming rifles and pistols at the police. Defendants Johnson, Burrell and Sutherland, according to the state's evidence, were in the area of the Burlington Northern bridge and had been within earshot of the warning. Someone threw one or more molotov cocktails. When two fisheries officers set out in a small boat to remove the net from the bridge pilings, shots were fired toward them, apparently from under the Burlington Northern bridge. Tear gas was released. About 35 minutes after the dispersal warnings, the police officers began to arrest members of the assembled crowd. Between 10:15 and 10:45 a.m. they completed arresting 22 persons. The defendants were not included among those arrested. The defendants claimed, in testimony presented in their defense, they were not in the crowd or in the general vicinity of the crowd because they did not arrive until later that morning. In any event, when the arrests described had been completed, Capt. Grady and most of the police officers left with the persons arrested. However, three or four police officers were left behind with instructions to patrol the general area, allowing any persons in the area to leave but to let no one in.

Between 11 and 11:30 that same morning, Capt. Grady and other police officers returned to the area of the encampment in response to a report that a fire had been started on the Milwaukee bridge. When the police arrived, they saw people on the nearby levee and on the roadway. There was a great deal of noise and confusion. Capt. Grady

was then immediately informed that a girl dressed in purple pants had set fire to the bridge. Of those in the crowd seen by Capt. Grady, about eight to ten persons were yelling such phrases as "Burn, baby, burn." Others were just watching the bridge fire from a distance. Capt. Grady concluded that the persons assembled constituted an unlawful assembly. Without further warning he ordered his police officers to arrest all persons present. The police did so with no difficulty, encircling the encampment area and moving in to confine all those in front of them into a small area. Defendants Johnson, Sutherland and Burrell were included among those thus arrested. At the time of their arrests, defendants Burrell and Sutherland were helping to film the occurrence. Neither had a press I.D. card to protect him against arrest.

Defendant Annis was not a part of the first group of persons ordered to disperse between 9:30 and 9:45 a.m. He was first seen at the second incident when he attempted to enter the area the police had encircled. Lt. Henderson informed him that the area was a place of unlawful assembly and asked him to leave. Defendant Annis did so after first stating that he was representing the American Civil Liberties Union. The lieutenant said it did not matter. Annis was next seen swimming in the Puyallup River near the Milwaukee bridge. Annis emerged from the river and began walking up the riverbank in the direction of the Indian camp. Officer Anderson then intercepted him and took him to the camp, where he was placed under arrest as a member of an unlawful assembly.

Subsequently, the four defendants were charged with violating both RCW 9.27.070 and RCW 9.27.060. The unlawful assembly charge against defendant Annis under RCW 9.27.060 was dismissed by the court. The jury found defendants Johnson, Sutherland and Burrell guilty on both the "failure to disperse" and "unlawful assembly" counts and the defendant Annis guilty on the "failure to disperse" count. Judgment was entered on the jury verdicts and the court denied the defendants' motion for new trial. Defend-

ants appealed, the appeals being later consolidated for a hearing here.

Defendants first contend the court committed prejudicial error in granting the state's motion before trial to amend the information by adding the charge of unlawful assembly[1] to the then existing charge of failure to disperse after warning from the "place of an unlawful meeting."[2] Defendants argue the state was not diligent in adding the unlawful assembly count and the defendants were not prepared to defend against the additional count and could not seek the continuance suggested by the state because of defendants' problems with witnesses and the potential unavailability of an attorney for one of the defendants. We hold the court did not manifestly abuse his discretion in allowing the unlawful assembly count to be added.

RCW 9.27.060 and 9.27.070 are in a group of statutes dealing with disturbances, riot and unlawful assembly to protect the public peace. RCW 9.27.060, the unlawful assembly statute, requires proof of an intention to do a prohibited act. No such proof of intent is required under RCW 9.27.070, the failure to disperse statute. *State v. Fisk*, 79 Wn.2d 318, 485 P.2d 81 (1971), distinguishes the two statutes and as to the latter states:

The purpose of the statutory proscription is to provide a

---

[1] RCW 9.27.060 provides:

"Whenever three or more persons shall assemble with intent—

"(1) To commit any unlawful act by force; or,

"(2) To carry out any purpose in such manner as to disturb the public peace; or,

"(3) Being assembled, shall attempt or threaten any act tending toward a breach of the peace, or an injury to persons or property, or any unlawful act—such an assembly is unlawful, and every person participating therein by his presence, aid or instigation, shall be guilty of a gross misdemeanor."

[2] RCW 9.27.070 provides:

"Every person who shall remain present at the place of an unlawful meeting after having been warned to disperse by a magistrate or public officer, unless as a public officer or at the request of such officer he is assisting in dispersing the same, or in protecting persons or property or in arresting offenders, shall be guilty of a misdemeanor."

means whereby unlawful mob action may be peaceably averted.

79 Wn.2d at 324.

RCW 9.27.060 and 9.27.070 are taken from Laws of 1909, ch. 249, §§ 298 and 299, p. 981. They differ somewhat from their predecessor Washington statutes. Code of 1881, §§ 859-861; Laws of 1873, §§ 73-75, p. 197; Laws of 1854, §§ 65 and 66, p. 87. They are largely taken from the Minnesota and New York statutes. Rev. Laws of Minn., §§ 5016 and 5017 (1905); 3 Birdseye, *Cumming & Gilbert's Consol. Laws of N.Y.*, §§ 2092-2094 (1909); 39 McKinney's *Consol. Laws of N.Y.*, §§ 2092-2094 (1944). The Minnesota, New York and Washington statutes have their roots in the common law. *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971); 4 W. Blackstone, *Commentaries* *142-*153; 2 Wharton's *Criminal Law and Procedure* §§ 853-857 (1957); *In re Bacon,* 240 Cal. App. 2d 34, 49 Cal. Rptr. 322 (1966).

Statutes dealing with the crime of failure to disperse after warning, generally require dispersion of members of an "unlawful assembly" rather than an "unlawful meeting" as used in RCW 9.27.070. This is not only true of the Minnesota and New York statutes, it is also true of statutes in other states. *See People v. Uptgraft,* 8 Cal. App. 3d Supp. 1, 87 Cal. Rptr. 459, *cert. denied,* 400 U.S. 911, 27 L. Ed. 2d 151, 91 S. Ct. 152 (1970); *In re Bacon, supra; Koss v. State,* 217 Wis. 325, 258 N.W. 860 (1935); *Lezama v. State,* 110 Fla. 304, 148 So. 304 (1933); *Louisville v. Lougher,* 209 Ky. 299, 272 S.W. 748 (1925).

We have found no published explanation of how "unlawful meeting" came to be substituted for the usual phrase "unlawful assembly." Possibly "unlawful meeting" in RCW 9.27.070 was chosen as a clearer statement of "unlawful assembly," defined in RCW 9.27.060, with no intention to change the meaning of the latter phrase. Such an argument conforms to the purpose of the statute to protect the public peace. In any case, even if equivalent meaning was not intended, the phrase "unlawful meeting" is broad enough to include the kind of meeting that RCW 9.27.060 charac-

terizes as an "unlawful assembly." Accordingly, preparation to defend against the crime of remaining present at an "unlawful meeting" would necessarily require preparation to defend against "unlawful assembly" as an included meaning of "unlawful meeting." Defendants here were put on notice of the included meaning suggested. The information charging violation of RCW 9.27.070 describes the crime as "remaining at the scene of unlawful assembly after warning." The information then charges that defendants "unlawfully and wilfully . . . remain[ed] present at the place of an unlawful meeting after having been warned to disperse by a public officer." We agree with the trial court's statement that "[t]he issue of unlawful and wilful assembly is inherent in each count."

■ The subsequent trial itself fails to show defendants were prejudiced in their ability to defend against the unlawful assembly count. Defendants' attorneys helped one another by their handling of matters common to their defenses. They cross-examined each of the state's witnesses at length. Johnson, Annis and Sutherland testified at length. The trial court, after observing the course of the trial, denied defendants' motions for new trial. That denial is consistent with his original view that the defendants would not be prejudiced by the addition of the unlawful assembly count on the morning of the trial. Defendants have failed to show prejudice. We find no abuse of discretion. *See* CrR 101.04W (b). *See State v. Smiley,* 167 Wash. 342, 9 P.2d 370 (1932); *State v. Brown,* 74 Wn.2d 799, 447 P.2d 82 (1968).

■ Defendants Burrell, Sutherland and Johnson contend the court erred in refusing to dismiss count 1, "failure to disperse." In passing on this motion to dismiss, the trial court "must draw all inferences that reasonably can be drawn [from the evidence] in favor of the state's position." *State v. Randecker,* 79 Wn.2d 512, 517, 487 P.2d 1295 (1971); *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968).

■ Defendants argue they were mere bystanders and neither committed nor personally participated in any act of

violence, nor incited others so to do. The argument does not require dismissal of count 1. In *State v. Fisk,* 79 Wn.2d 318, 485 P.2d 81 (1971), the court, in discussing RCW 9.27.070, said:

> [T]he elements of the offense set forth in RCW 9.27.070 may be listed as: (1) the unauthorized presence of the person charged at an unlawful group meeting; (2) the issuance to that person of a warning to disperse by a magistrate or public officer; and (3) the failure or refusal to disperse after such warning. Criminal intent on the part of the person charged is not a prerequisite to conviction. His unwarranted presence at, and his refusal to heed a lawful order to disperse from, an assemblage which by its presence, composition, location, nature, and behavior has become unlawful are the keystones of the offense. The purpose of the statutory proscription is to provide a means whereby unlawful mob action may be peaceably averted.

79 Wn.2d at 324.

It will be noted there is no express exception for the innocent bystander. The statute, however, requires existence of an "unlawful meeting." If that term means "unlawful assembly," one who refuses to disperse may be found guilty of the crime if he participates "by his presence, aid or instigation" without personally committing any acts of violence. *State v. Dixon, supra,* explains the phrase as follows:

> This does not mean, however, that evidence of remaining in the face of requests or lawful orders would not be admissible to show the unlawful intent or design contemplated by the statute where lawfully constituted peace officers or others authorized by law in the reasonable exercise of lawful police powers and in a reasonable effort to protect lives, and property, and to maintain the public peace, request or direct the assembled persons to leave the area where they have assembled.
>
> The term, participates by his presence, thus does not include innocent bystanders, mere passersby, casual pedestrians or other persons who, without intent, purpose or design to do other than be where they are, find themselves among a crowd or group of people. To participate by one's presence at an unlawful assembly means to en-

gage actively in the prohibited conduct, to go there or remain there, or willfully to fail to leave there after forming an intent with others to do the things prohibited by the enactment.

"Participate" is an active verb. It is to be read in the context of the entire unlawful assembly statute and in the light of the delineation of that offense in preceding paragraphs of the statute. RCW 9.27.060. Participating by one's presence in an unlawful assembly is the very antithesis of an innocent and unwitting presence, and requires for conviction evidence or inference from evidence to show an intent or design to engage in or further the unlawful acts while being present at the assembly, *i.e.*, carry out any purpose in such a manner as to disturb the peace, or attempt or threaten to do so, or attempt or threaten injury to any person or property, or attempt or threaten any other unlawful acts.

78 Wn.2d at 810.

Defendants' brief points out that, according to the state's evidence, defendants Johnson, Sutherland and Burrell "were observed at the first incident." The repeated warning to disperse was loud enough for them to hear and in terms such as to be reasonably understood as applicable to them. Neither they nor others to whom the warning was directed made any effort to disperse. *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971), points out that participation is sufficient if an individual "willfully [fails] to leave there after forming an intent with others to do the things prohibited by the enactment," and that "remaining in the face of requests or lawful orders [is] admissible to show the unlawful intent . . . contemplated by the statute . . ." 78 Wn.2d at 810. It was, therefore, a jury question whether defendants participated in the unlawful meeting "by [their] presence, aid or instigation . . ."

If the term "unlawful meeting" is a term of broader import than "unlawful assembly," RCW 9.27.070 is nevertheless violated even as to an innocent bystander who, hearing the warning, nevertheless "remains present." Physical presence, not participation, is all that is required. Therefore, whether a person present remains present with

criminal intent or participates in acts of personal violence need not be shown.

Defendants argue the warning given was inadequate because it neither defined the area from which dispersal was ordered nor stated a time limit to leave. RCW 9.27.070 does not require the warning to expressly define the area to be cleared. The crime is committed with respect to a person "who shall remain present at the place of an unlawful meeting after having been warned to disperse by a . . . public officer . . ." The place of the unlawful meeting was within the general area previously described in which the people were present and warned to disperse and it was at least in the area physically occupied by the assemblage of persons arrested, together with the contiguous surrounding area a sufficient distance away to require dispersal therefrom to accomplish the purpose of the dispersal ordered. The purpose of dispersal "is to provide a means whereby unlawful mob action may be peaceably averted." *State v. Fisk, supra* at 324. It is for the jury to determine whether the defendants were in the "place" from which they were ordered to disperse. *See Favors v. State,* 104 Ga. App. 854, 123 S.E.2d 207 (1961).

Further, the contents of the warning could be reasonably understood to apply to defendants then present in the place of the unlawful meeting. This is not a case of defendants seeking to comply with the warning but in doubt as to the area to be vacated, thus failing to go far enough away from the place of the unlawful meeting. It is rather a case of refusing to leave at all, regardless of whether the area to be vacated is described in the warning given. The jury could have found the failure of the warning to describe the area to be vacated has nothing to do with the defendants' failure to comply, that defendants would have refused to comply even had the area to be vacated been described in the warning they heard.

Nor is the warning to be disregarded because it does not set a time limit to disperse. RCW 9.27.070 does not require the warning to set such a time limit to disperse. *Cf.* 1 Geo.

I, ch. 5, § 3 (1714), as discussed in 4 W. Blackstone, *Commentaries* \*143. The purpose of the dispersal statute is best served by prompt compliance with the warning, *i.e.*, a more expeditious compliance than that required by the reasonable time test. The jury could find the warning could be reasonably understood to require prompt compliance. The jury, furthermore, could find that whether the test be prompt compliance or reasonable compliance, there was adequate time for compliance under either test if the defendants intended to comply. In addition, as in the case of the failure of the warning to describe the area to be vacated, one may not complain of the failure of the warning to explicitly state the time for compliance, if he would have disregarded the warning in any event.

Defendants then argue that when they were arrested the first meeting had terminated as a matter of law, that the police had left with the persons arrested, that defendants' presence during the second incident when the bridge fire occurred does not put the defendants in the position of remaining present during the first claimed unlawful meeting. According to the state's evidence, defendants Johnson, Sutherland and Burrell were present when the warning was given to the persons present in the area of the first meeting. They refused to leave, *i.e.*, they remained present notwithstanding the warning. The crime was committed before the police officers left. The court did not err in refusing to dismiss count 1.

Defendants Johnson, Sutherland and Burrell contend the court committed prejudicial error in not dismissing count 2, "unlawful assembly." They argue that, at best, they were merely peaceful bystanders not responsible for the acts of violence of others. We have pointed out that the jury could find from the evidence presented by the state that defendants Johnson, Sutherland and Burrell were more than mere peaceful bystanders—that they participated in the unlawful assembly by their "presence, aid or instigation." *State v. Dixon, supra.* The court did not err in refusing to dismiss count 2.

Defendants contend the court erred in giving instructions 7, 8, 9 and 10[3] defining the crime charged under RCW 9.27.070 and refusing to give defendants' proposed instruction 2. Defendants have failed to include proposed instruction 2 in the statement of facts on appeal, and we are thus precluded from reviewing the instruction as such. CAROA 34(9), formerly 34(8); *State v. Myers,* 6 Wn. App. 557, 494 P.2d 1015 (1972). However, exceptions taken to court's instructions 7, 8, 9 and 10 are sufficient to enable us to review the denial of proposed instruction 2 insofar as that instruction requires that the jury find "that the defendants . . . heard the warning . . ."

A court's jury instructions may describe the crime charged in the language of the statute. *State v. Bixby,* 27 Wn.2d 144, 177 P.2d 689 (1947). The court may supplement the statutory language by an explanatory instruction. *State v. Eike,* 72 Wn.2d 760, 435 P.2d 680 (1967). However, an explanatory instruction is unnecessary if the statutory language is reasonably clear and not misleading to persons of ordinary intelligence. Thus the statutory language "warned to disperse" is self-defining. The words implicitly mean a warning that is heard or otherwise brought home to the person warned so that his conduct may be affected. If the implicit meaning of a statutory phrase is apparent to a man of ordinary intelligence, it is unnecessary to make it ex-

---

[3]Instructions 7, 8, 9 and 10, except for the reference to the individual defendant involved, are identical. Instruction 10, for example, reads:

"If you find from the evidence beyond a reasonable doubt all of the following alleged facts, to-wit:

"(1) That in Pierce County, Washington,

"(2) On or about the 9th day of September, 1970,

"(3) That the defendant, BROCK DAMON SUTHERLAND,

"(4) Did wilfully remain present

"(5) At the place of an unlawful meeting

"(6) After having been warned to disperse

"(7) By a public officer;

"Then you shall find the defendant, BROCK DAMON SUTHERLAND, guilty of remaining present at the place of an unlawful meeting after having been warned to disperse by a public officer, as charged in Count I of the amended information."

plicit. Thus, for example, the word "act" implicitly means "voluntary act," and an instruction using only the' word "act" in the sense of a voluntary act is not erroneous because of the omission of the word "voluntary." *State v. Utter,* 4 Wn. App. 137, 479 P.2d 946 (1971).

The additional instruction concerning hearing the warning was also unnecessary because of the effect to be given to instructions 7 to 10 and 13. Instructions 7 to 10 require defendants to act "wilfully" in "remaining present . . . after having been warned to disperse . . ." Court's instruction 13 defines "wilful" as meaning "purposely and intentionally . . . a set purpose and intent to do the exact thing which the law says shall not be done." One cannot fairly be said to "wilfully" remain present after warning unless he hears the warning. We cannot say the court abused his discretion by refusing to expressly instruct on the necessity that the warning be heard. The statutory language, especially in light of instructions 7 to 10 and 13, was reasonably clear and not misleading. *See State v. Morgison,* 5 Wn. App. 248, 486 P.2d 1115 (1971).

Defendants Burrell and Sutherland contend the court erred in refusing to give their proposed instruction 16A. That instruction reads:

> If you find that any of the defendants were legitimately participating in the filming on that morning you must dismiss.

The instruction was properly refused. It ignored the possibility that a defendant might be "legitimately participating in filming" and yet at the same time engaged in other prohibited activities for which he was charged.

Defendants contend the court erred in giving similar instructions 15, 16 and 17 as to defendants Johnson, Burrell and Sutherland, respectively.[4] It is contended the instructions fail to make clear that before defendants may be criminally responsible they must "knowingly participate in an assemblage of three or more individuals entertaining a common intent to . . . breach the public peace . . ." *State v. Fisk,* 79 Wn.2d 318, 485 P.2d 81 (1971). Instruc-

tions 15, 16 and 17 require the defendant named with two or more persons to "wilfully" assemble "with intent to carry out a purpose [i]n such a manner as to disturb the public peace." This provision is in substance similar to requiring "a common intent to . . . breach the public peace . . ." We find no error.

Defendants Burrell, Sutherland and Johnson contend the court erred in failing to give their proposed instruction 4. That instruction, assuming it to be reviewable insofar as it appears in the statement of facts on appeal, reads:

> [I]t ceases to be an unlawful meeting after the police and law enforcement officers leave the scene and allow individuals to remain in the area. For the purpose of this charge, if you find that an unlawful meeting ceased, then you cannot use the warnings to disperse at that former unlawful meeting to constitute warnings to disperse at a later alleged unlawful meeting.

The instruction was properly refused because it had no application to the evidence here. *Owens v. Anderson,* 58 Wn.2d 448, 364 P.2d 14 (1961). The instruction erroneously assumes a fact not supported by the evidence, namely, that all law enforcement officers left the scene, allowing individuals to remain in the area as if it were proper for them to remain. There is no evidence that the police in effect withdrew their dispersal order as to individuals who avoided arrest at the first incident.

Defendants contend the court erred in refusing their proposed instruction 6. However, that instruction is

---

[4]Instruction 17 is illustrative:

"If you find from the evidence beyond a reasonable doubt all of the following alleged facts, to-wit:

"(1) That in Pierce County, Washington;

"(2) On or about the 9th day of September, 1970;

"(3) That the defendant BROCK DAMON SUTHERLAND

"(4) Did wilfully assemble

"(5) With two or more persons

"(6) With intent to carry out a purpose

"(7) In such a manner as to disturb the public peace;

"Then you shall find the defendant BROCK DAMON SUTHERLAND guilty of Unlawful Assembly as charged in Count II of the amended information."

not in the statement of facts and we cannot review the refusal to give it. CAROA 34(9), formerly 34(8); *State v. Myers, supra.*

Defendant Annis contends the court erroneously refused to dismiss count 1, "refusal to disperse," as to him. We agree. RCW 9.27.070 requires defendants to "remain present at the place of an unlawful meeting after having been warned to disperse . . . by a public officer . . .". The evidence of Annis remaining present after warning heard by him is lacking. A subsequent arrival at the place of an unlawful meeting, whether or not voluntary, is not the same as remaining present after warning. It is true that sometime before Officer Anderson took Annis to the camp after the latter emerged from the Puyallup River, Annis knew from what Lt. Henderson had earlier told him that the area he had sought to enter was a place of unlawful assembly. However, warning is no ingredient of the crime of unlawful assembly, and there is no evidence that Annis knew that a warning to disperse had been given. The dismissal of the unlawful assembly count as to defendant Annis meant that (1) he was not voluntarily present at either the first or second incidents, or (2) he shared no intent with others to do the acts prohibited by the unlawful assembly statute, or (3) was neither voluntarily present nor shared the required guilty intent. There is no evidence that defendant Annis heard the warning to disperse or that he was present or remained present after the warning at the so-called first incident. His being taken by the police officer to the Indian encampment during the so-called second incident does not constitute a continued presence after hearing a warning to disperse. Count 1 should have been dismissed.

Defendants finally contend count 1, "failure to disperse," should have been dismissed because the use of the undefined phrase "unlawful meeting" in RCW 9.27.070 renders the statute unconstitutionally vague and because the statute is violative of defendants' First Amendment rights. Defendants cite no case directly in point, but rely rather on

general language in several opinions. They particularly rely on *Landry v. Daley*, 280 F. Supp. 938 (N.D. Ill. 1968). That case held invalid a portion of the Illinois Mob Action Statute prohibiting

(2) The assembly of 2 or more persons to do an unlawful act; . . .

It may be doubted whether, since *State v. Dixon*, 78 Wn.2d 796, 479 P.2d 931 (1971) and *State v. Orange*, 78 Wn.2d 571, 478 P.2d 220 (1970), it is still an open question in this state whether the use of the words "unlawful act" in the unlawful assembly statute (if it be assumed that "unlawful assembly" is either an equivalent or included meaning of "unlawful meeting") is the use of an unconstitutionally vague phrase. The words "unlawful act" are far more general and all-embracing than "unlawful meeting." Furthermore, if "unlawful meeting" means "unlawful assembly" in the context used, then the phrase is no more unconstitutionally vague than is RCW 9.27.060, the validity of which was upheld in *State v. Dixon, supra.* If, however, the phrase "unlawful meeting" is intended to have broader reach than "unlawful assembly" described in RCW 9.27.060, the phrase "unlawful meeting" is capable of being understood by "every man of common understanding" or by "men of ordinary intelligence." 78 Wn.2d at 805, 809. Thus, the phrase "unlawful purpose" has been upheld as not constitutionally vague. *Mixon v. State*, 226 Ga. 869, 178 S.E.2d 189 (1970); *State v. Bulot*, 175 La. 21, 142 So. 787 (1932). Indeed, the words "unlawful act" contained in unlawful assembly statutes have been frequently enforced. *State v. Wooldridge*, 129 W. Va. 448, 40 S.E.2d 899 (1946); *State v. Woolman*, 84 Utah 23, 33 P.2d 640, 93 A.L.R. 723 (1934). The objection of unconstitutional vagueness in unlawful assembly statutes has also been rejected elsewhere. *In re Bacon*, 240 Cal. App. 2d 34, 49 Cal. Rptr. 322 (1966). *See also Colten v. Kentucky*, 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972).

■ Futhermore, neither RCW 9.27.070 nor RCW 9.27.060 violates the First Amendment right of peaceable assembly

or the right of free speech. The right to peaceably assemble for lawful purposes is protected by the First Amendment, by Const. art. 1, § 4, and by RCW 9.27.010. The right of free speech is likewise protected by the First Amendment and by Const. art. 1, § 5. RCW 9.27.060 does not violate these constitutional protections.

The basically democratic and explicitly constitutional rights of peaceable assembly and freedom of speech are not abridged by laws which prohibit gatherings of people intent on criminal activity, or which thwart the conduct of groups who, having lawfully assembled, formulate a purpose to breach the peace, or injure persons or property or do any other unlawful acts. The constitutional provision that Congress shall make no law abridging "the right of the people peaceably to assemble, and to petition the government for a redress of grievances" (U.S. Const. amend. 1), though applicable to the states, does not deprive the people of their right to legislate against mob action, riots and violent trespass upon their institutions. Members of a mob bent on a lynching if forcibly dispersed by peace officers are in no position to complain that they have been deprived of the rights of peaceable assembly and freedom of speech.

*State v. Dixon, supra* at 806. Reasoning similar to that quoted from *State v. Dixon, supra,* has been used to uphold the validity of statutes designed to protect the public peace. *State v. Orange, supra. In re Bacon, supra. See People v. Uptgraft,* 8 Cal. App. 3d Supp. 1, 87 Cal. Rptr. 459, *cert. denied,* 400 U.S. 911, 27 L. Ed. 2d 151, 91 S. Ct. 152 (1970). The reasoning used is applicable to RCW 9.27.070 whether or not "unlawful meeting" means or includes "unlawful assembly" defined in RCW 9.27.060.

It is unnecessary to determine whether defendant Johnson's appeal is moot because, pending appeal, he has paid his fine to avoid imprisonment. *See State v. Winthrop,* 148 Wash. 526, 269 P. 793, 59 A.L.R. 1265 (1928).

The judgment is reversed with direction to dismiss as to

545

defendant Annis, but affirmed as to the remaining defendants Burrell, Sutherland and Johnson.

Swanson and Callow, JJ., concur.

Petition for rehearing denied October 31, 1972.

Review granted by Supreme Court December 15, 1972.